### TYRRELL v. UNITED STATES.
#### No. 12991.

United States Court of Appeals
Ninth Circuit.

Nov. 3, 1952.

Rehearing Denied Dec. 10, 1952.
Writ of Certiorari Denied March 9, 1953.
See 73 S.Ct. 646.

Philander Brooks Beadle, Morton L. Silvers, San Francisco, Cal., for appellant.

Chauncey Tramutolo, U. S. Atty., Joseph Karesh and Donald B. Constine, Assts. U. S. Atty., San Francisco, Cal., for appellee.

Before HEALY and BONE, Circuit Judges, and McCORMICK, District Judge.

McCORMICK, District Judge.

Robert Russell Tyrrell, a native-born citizen of the United States, 22 years of age, and a registrant under the Selective Service System, appeals from a judgment of conviction in the District Court for the Northern District of California after trial by jury therein upon an indictment charging him with the violation of Section 12(a) of the Selective Service Act of 1948, 50 U.S.C.A.Appendix, § 462(a).

The specific accusatory act for which the appellant was indicted and adjudged guilty was that he, having been duly classified in Class I-A, and having been duly ordered by his draft board to an induction station and having been forwarded thereto, did knowingly refuse to submit himself to induction and be inducted into the armed forces of the United States as provided in such Selective Service Act and the rules and regulations made pursuant thereto.

There being no question under the record that the registrant Tyrrell knowingly refused to be inducted into the armed forces of the Nation when he, under orders, reached the induction station at Fort Ord, California, his appeal from the judgment of the District Court is determinable under the limited scope of judicial review in considering the draft board's action relating to classification of registrants under the Selective Service Act and concomitant regulations. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. There are also claimed

errors in the District Court during the trial which require consideration by this court.

In the Classification Questionnaire filed with his draft board on June 12, 1950, Tyrrell stated he was a full-time student preparing for the ministry under the directions of Christ's Church of the Golden Rule in a theological or divinity school. He also stated therein that he was single, was neither a. minister of religion nor regularly serving as such, and that he had not been formally ordained. At the time of filing his questionnaire and for two years immediately prior thereto, he was attending the Christ's. Church of the Golden Rule student training project located at Lake Creek, Oregon. Under paragraph VIII of the questionnaire—Present Occupation—he failed to indicate his work, wage or compensation status other than that he was a full-time student minister of Christ's Church of the Golden Rule; which church he had attended six years. He answered Paragraph X—Education—That he had completed eight years of elementary and two years of high school. In the space allowed for "Registrant's Statement Regarding Classification," he expressed an opinion that his classification under the facts stated in the questionnaire should be Class IV-D, and he attached to the questionnaire his handwritten statement of his religious beliefs and appealed to his local draft board the importance to him to complete his studies as a student minister at Christ's Church of the Golden Rule as by such he expressed a belief that he would be an exemplar of a better road to peace and happiness, other than conflict. However, he made no claim as a conscientious objector to war. Cf. Cox v. Wedemeyer, 9 Cir., 192 F.2d 920.

Contemporaneously with the filing of his questionnaire Tyrrell submitted a communication dated June 7, 1950, on a letterhead of "Theological Seminary, Christ's Church of the Golden Rule, 801 Silver Avenue, San Francisco 12, California," to his local draft board certifying over the signature of the "Dean," that Robert Russell Tyrrell was registered and enrolled as a full-time student minister in such seminary and that he was earnestly pursuing studies to qualify him to teach, preach and illustrate the precepts "of the great wayshower of man." He also deposited with the draft board in connection with his questionnaire a "Miniature Sermon," entitled "Our Opportunities," and other sermonets, wherein he expressed his views of the religious aspirations and beneficent potentialities of student ministers of Christ's Church of the Golden Rule.

A handwritten entry made on the back of the questionnaire on file in the local draft board and initialed by a clerk therein represented that Tyrrell was classified by such board in Class IV-D by a vote of three to nothing, and that a form notice of such classification was mailed to him that day. Such classification entry, however, has lines drawn through it showing its obliteration and indicating its ineffectuality as draft board action, and the uncontradicted testimony of a draft board member at the trial in the District Court was that the classification IV-D was not the classification of the board but an entry by a clerk who had no authority to classify.

No further processing of Tyrrell's status occurred until August 28, 1950, when his local draft board classified him in Class I-A by a vote of three to nothing, and on the following day a notice of such classification was mailed to him, although Tyrrell has contended that it was not received by him. On December 5, 1950, an order to report for physical examination was sent to the appellant. He reported on December 18, 1950, and upon being found acceptable for military service he was so notified, whereupon Tyrrell requested and, although not entitled to such procedure under the letter of Regulation 1624.1(a), was granted a personal hearing before the local draft board, which, after considering extensive oral and documentary evidence from the registrant and other witnesses relative to Tyrrell's membership and activities in Christ's Church of the Golden Rule, the board, which at the time consisted of two present of a three-officered group, by a unanimous vote, retained Tyrrell in I-A and notified him of such action by the appropriate form mailed to him on January

9, 1951. One of the members of such draft board made handwritten notes in summary of the oral testimony and other information presented before the draft board. Such summary was dictated to a clerk also present at the hearing, who typed it and filed it in the registrant's file in the local draft board. The handwritten summary was also so filed. In the summary there was no mention of Tyrrell's version of the significance of his ranch work in Oregon, although such work was otherwise mentioned and described in the summary; it specified the duration of such activity as 8 hours per day, 48 to 56 hours per week; the maximum time of Tyrrell's activities on the project, as to visible aspects, being stated as between church work and secular work in ratio "1 to 8." The summary also stated that "Registrant to submit further evidence, file to be forwarded to Appeal Board when received."

On January 14, 1951, Tyrrell by letter received at his local draft board, appealed his classification I-A to the Appeal Board and also petitioned that body to classify him as IV-D. In this letter he enclosed a copy of the canon laws and a brochure of the ideals and essence of the teachings of Christ's Church of the Golden Rule which he requested be included in his file. The entire file of the appellant was sent to the Appeal Board on January 23, 1951, and under date of February 12, 1951, the file was sent back to Tyrrell's local board with the Appeal Board's decision classifying Tyrrell I-A by a vote of Yes 4, No 0, whereupon due notice was sent to registrant. Thereafter Tyrrell was duly ordered to report for induction, with the result earlier stated in this opinion.

Appellant initially argues that he had been denied due process under the guaranty of the Fifth Amendment to the Constitution of the United States in that the written record sent to the Draft Appeal Board omitted any reference to the religious significance of the ranch work performed in Oregon.

■■ We cannot agree with this contention. While it is true that the summary prepared by a member of the local draft board was incomplete if considered alone, in not conveying to the Appeal Board the registrant's specific characterization of his ranch work,[1] nevertheless the registrant's file that was sent to the Appeal Board by the local board included the Constitution and Canon Laws of Christ's Church of the Golden Rule which contain the tenets and doctrine that the work of an "ecclesiastical" member of the church such as Tyrrell on a "project" of the church is part of its divinity studies and religious training. Thus the Appeal Board had before it the relationship between the church's creed and Tyrrell's daily labors on the Oregon ranch. Such information amounted to the substantial equivalent of the matter that was missing from the summary and, moreover, having been submitted and included in his file by Tyrrell himself, this evidential material was intended to show to the Appeal Board that the sole motive of his ranch work was the fulfillment of the precepts of Christ's Church of the Golden Rule. It will be presumed that the Appeal Board gave consideration to this situation as well as to the entire file before it in evaluating the registrant's status and classifying him as I-A. Such action completely and finally supersedes the action of the local board in classifying Tyrrell, although the classification of the Appeal Board is the same as that of the local board. Cramer v. France, 9 Cir., 148 F.2d 801.

The appellant contends that the District Court erred in instructing the jury that there was "a basis in fact" for the change in his classification from IV-D to I-A.

■ We have earlier in this opinion adverted to the ineffectiveness of the clerical entry of a IV-D classification on the back of Tyrrell's questionnaire, but even if such classification had been validly made in the month of June, 1950, by the local board, its later unanimous action of August 28, 1950, was well within its authority.

The duty of local draft boards to classify and reclassify registrants in the Selective Service System under the Act of 1948 is one of continual recurrence. This duty

1. Regulations 1623.1(b); 1624.2(b) and 1626.13(a), 32 C.F.R., pp. 821-829.

has been implemented by regulations that are designed and have been promulgated to meet and affect changes and emergencies relative to the national security. The regulations expressly provide that no classification is permanent and that steps may be taken by the board to keep currently informed concerning the status of classified registrants.[2]

In order to keep currently informed concerning the status of classified registrants and particularly those who have been allowed deferments or exemptions, it is incumbent on the local board to survey its registered personnel and examine its files in the light of world conditions and events so that military requirements may be safeguarded and provided.

It is to be presumed that the board discharged this duty, and when consideration is given to the momentous factual event in Korea which was not weighed by the board when the claimed classification in June, 1950, took place, it is clear that the evidence and circumstances operated substantially in support of the classification found by the board and consequently the court properly charged the jury that there existed a basis in fact for the classification of August 28, 1950, and it is also significant in considering the validity and effectiveness of such classification of August 28, 1950, that the registrant Tyrrell was thereafter given a personal appearance before the local draft board, and after a full, fair and careful hearing was retained in Classification I-A under date of January 8, 1951, by the unanimous vote of the draft board officers participating in such hearing and, further, that on appeal the same classification was made [3] by the Appeal Board without dissent.

■ In considering cases claiming error in the classification of registrants in the Selective Service System it is to be noted that Congress has by restrictive legislation under its "well-nigh limitless" constitutional war powers not only clearly and explicitly defined in the Selective Service Act

of 1948 a registrant entitled to exemption as a divinity student in Class IV-D, 50 U.S.C. A.Appendix, § 456(g), but also has specifically authorized the promulgation of regulations which confer upon the local draft board the responsibility to decide, subject to appeal through administrative processes, the class in which each registrant shall be individually placed and, further, that each registrant will be considered as available for military service until his eligibility for deferment or exemption from military service is clearly established to the satisfaction of the local board without any discrimination because of creed or religious affiliations.[4] We find no such discrimination in the record before us, nor does it appear therefrom that the Board acted arbitrarily against the registrant Tyrrell. Under such a situation the Board's action is conclusive.

But the appellant asserts that "the court erred in refusing to submit to the jury the question of whether appellant's constitutional right to freedom of religion had been violated by the local board's determination of whether or not studies in a church's program of instructions for the ministry were or were not theological studies."

■ In making this assertion appellant claims a right to have a jury pass independently on an issue previously determined by the draft board or to broadly review such administrative action. Such procedure would be contrary to settled principles of federal administrative practice, particularly those activating the Selective Service System, Cox v. United States, supra. The District Court having properly determined as a matter of law that there was a basis in fact to support the classification order of the draft board, there was no error in the court's action in refusing to submit to the jury a matter which is not within its province.

Moreover, in making such claim in a criminal prosecution against a registrant for the violation of Section 12(a) of the Selective Service Act of 1948 relative to

2. Part 1625.1(a), (c), 32 C.F.R. 826.

3. Cramer v. France, supra.

4. United States v. Macintosh, 283 U.S.

605, 624, 51 S.Ct. 570, 75 L.Ed. 1302; Cox v. United States, supra; 50 U.S.C.A. Appendix, § 460(b, c); Part 1622.1(c), (d), 32 C.F.R. 811.

exemptions from military duty, we think the appellant has failed to discern the origin of such duty and its basic difference from other personal rights.

■ The privilege of a native-born objector to avoid bearing arms comes not from the Constitution but from the Acts of Congress. Such has been the uniform pronouncements of the Supreme Court,[5] and this court in a recent decision has reiterated this settled doctrine by stating in Richter v. United States, 9 Cir., 181 F.2d 591, 593:

> "There is no constitutional right to exemption from military service because of conscientious objection or religious calling."

To like effect are Cannon v. United States, 9 Cir., 181 F.2d 354, and George v. United States, 9 Cir., 196 F.2d 445.

Appellant in the briefs stresses the use of a "list of recognized Theological or Divinity Schools" used by the draft board at the personal interview extended to the registrant Tyrrell on January 8, 1951. This list was issued by the California State Director of the Selective Service System and circulated by him among the local draft boards under the authority of Part 1621.14 (a), (b), 32 C.F.R. 810. It listed indiscriminately California schools recognized as such institutions by the Selective Service System to August 1, 1950. The list did not contain any mention of Christ's Church of the Golden Rule or any school activities of such religious organization. It is clear that the list was issued and used solely as a guide to the draft boards so as to facilitate their consideration of classification problems that might come before them. It was not an inflexible standard.

The record shows that where the list contained an institution that was attended by a registrant, the board followed the list in its classification inquiries, but that if satisfied that a registrant was not actually engaged in the study of the ministry or preparing himself for such study the list had no binding effect in classifying a registrant and was not considered to such an extent by the draft board.

■ A careful study of the record in this appeal indicates that the appellant is contending a right to the IV-D classification as a student minister because he and his church consider him entitled thereto under their interpretation of the precepts and canons of registrant's church membership and his ranch work in Oregon. Such a broad claim of exemption is not compatible with the Congressional intent manifested in Section 456(a) of the Selective Service Act of 1948 and the regulations implementing such Act. Cf. Rase v. United States, 6 Cir., 129 F.2d 204, 209.

■ A final claim of prejudicial error is made by the appellant in the court's failure, when the jury during its deliberations was brought into the courtroom, to answer questions propounded by jurors on the instructions applicable to the list of "Theological or Divinity Schools" furnished by the State Director of Selective Service for the use of the draft boards and also on the meaning of a "recognized organization" mentioned in the instructions to the jury that were duly given to the jury at the close of the evidence and arguments.

We think in the light of the eminent fairness and accuracy of the charge to the jury when considered in its entirety and the legal limitations on the functions of the jury in the case under settled legal principles of federal jurisdiction there is no error in the court's action in this matter. Moreover, this appellant having failed to comply with Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A., is in no position under the record to complain of the court's attitude in this matter.

Finding no reversible error, the judgment is affirmed.

5. Jacobson v. Massachusetts, 197 U.S. 11, 29, 25 S.Ct. 358, 49 L.Ed. 643; Arver v. United States (Selective Draft Law Cases), 245 U.S. 366, 389, 390, 38 S.Ct. 159, 62 L.Ed. 349; United States v. Macintosh, supra.