**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Perry Bowen MOORE, Defendant-Appellant (two cases).**

**Nos. 11127, 11222.**

United States Court of Appeals
Seventh Circuit.

Dec. 9, 1954.

Francis Heisler, Chicago, Ill., Pearl Baer, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., James B. Parsons, Asst. U. S. Atty., Chicago, Ill., J. P. Lulinski, Ann Lavin, Chicago, Ill., William T. Hart, Asst. U. S. Attys., Joliet, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Defendant appeals, in No. 11127, from a judgment of the District Court ad-

judging him guilty as charged in an indictment of one count of refusing to submit to induction into the armed forces of the United States in violation of the Universal Military Training and Service Act, as amended, 50 U.S.C.A.Appendix, § 462, and, in No. 11222, from an order of the same court denying his motion for a new trial on the ground of newly discovered evidence.

Defendant registered shortly after his eighteenth birthday. On the basis of his questionnaire, he was given a preliminary I–A classification. In May, 1951, defendant requested a personal appearance before his local board in order to get his classification changed. from I–A to IV–E, the then classification for conscientious objectors to participation in war, the equivalent of the current I–O classification. He was granted a personal appearance on November 1, 1951. In his application for conscientious objector status (SSS Form 150), filed April 6, 1951, defendant had stated that he was conscientiously opposed to participation in war by reason of his religious training and beliefs acquired through his affiliation with the Church of Jesus Christ of Sullivan. This church, commonly known and hereinafter referred to as the Harshmanites or the Harshmanite church, is a semi-communal religious sect indigenous and confined to Sullivan, Illinois, and the surrounding vicinity. After his appearance, the local board, on November 5, 1951, classified defendant I–O, i. e., conscientiously opposed to participation in the armed forces in either a combatant or noncombatant capacity.

Meanwhile, the question of the draft status of certain other members of the sect had been, on November 1, 1951, presented to the State Appeal Board, which, between that date and December 13, 1951, classified each of the affected registrants I–A. On the latter date, after the files in these other cases had been returned by the state board to the local board, the latter reclassified defendant, placing him in class I–A. He appealed. On January 17, 1952, the local board placed in his file for the appeal board its written summary of the evidence considered by it in reclassifying him. The reasons given were "the consensus of opinion of the Local Board [is] that part of this religious group could not be I–A and the other part I–O when all hold to the same tenets of religion" and the weight accorded to a petition in the files, signed by some 354 residents of Moultrie County who "do not believe the members of this faith are true conscientious objectors." The state appeal board retained defendant in class I–A.

The National Director of Selective Service, General Lewis B. Hershey, having become interested in the Harshmanite cases, in July of 1953 processed an appeal in defendant's case to the Presidential Appeal Board. The latter reviewed defendant's file and placed him in Class I–A–O, i. e., opposed to combatant service but inductible in a noncombatant capacity.

Defendant was ordered to report for induction pursuant to the latter classification on October 21, 1953. He reported, and was accepted, but refused to submit to induction when ordered to do so. The indictment and his conviction followed.

Of the several contentions of error advanced by defendant for reversal of his conviction, we shall consider first the assertion that the trial court's refusal to permit him and certain other witnesses to testify deprived him of a fair trial. Defendant and these certain other members of the Harshmanite church were prepared to testify in his behalf but all refused on religious grounds either to take the oath or to make affirmation. Thereupon, the court refused to permit them to testify.

■ This was not error. Rule 26 of the Federal Rules of Criminal Procedure, 18 U.S.C., adopts the principles of the common law as the rules governing questions of admissibility of evidence and competency of witnesses, except insofar as the common law has been expressly modified. The requirement of the testimonial oath has been embedded in the

principles of the common law for hundreds of years, VI Wigmore on Evidence § 1815, and, as relaxed, by Rule 43(d) of the Rules of Civil Procedure, 28 U.S.C., which permits "a solemn affirmation" in lieu of the oath, is a part of the common law of criminal procedure applicable in the Federal courts. The constitutional right to a fair trial requires, in this respect, only that the court permit one charged with crime to call and qualify witnesses to testify on his behalf. The court may not exclude the testimony of witnesses who have been duly sworn and are competent to testify. But defendant cannot complain of the inability of himself and other witnesses on his behalf to bring themselves within the solemn requirements of testimonial capacity.

With two exceptions, to be considered separately, the remaining issues raised on these appeals are inextricably bound to, and will be considered with, defendant's principal contention that the judgment must be reversed because there is no basis in fact to support the December 13, 1951, decision of the local board changing his classification from I–O to I–A. It is argued that no new fact was before the board on that date which supported a reopening of his classification; that the board's reclassification of defendant because of his membership in the Harshmanite church was an unconstitutional denial of his rights of freedom of religion and equal protection of the laws and beyond the statutory authority of the local board; that the petition of residents of Moultrie County could not have constituted a valid reason for his reclassification; and that a new trial should have been granted on the ground of newly discovered evidence that all facts before the local board at the time of reclassification were known to the board prior to the time when it classified defendant I–O.

Although apparently this is the theory on which the trial court considered the basis in fact question, the premises are misleading in that they misconstrue the nature of the functions of the administrative agencies provided

for by Section 10(b) (3) of the Act, 50 U.S.C.A.Appendix, § 460(b)(3). The three separate agencies, i. e., the local board, state appeal boards and the Presidential Appeal Board, are given concurrent power to determine all questions or claims with respect to classification. The appeal boards are in no judicial sense appellate agencies, but are, rather, agencies superior to the local boards, which consider anew each application referred to them, and determine, on the basis of their own proceedings, the appropriate class for the affected registrant. A classification given by an appeal board is not, therefore, merely an affirmance of the action of an inferior agency, but is the independent act of such board.

Undoubtedly, the confusion which prevails on this question results, as the government suggests, from the fact that only the local board deals directly with the registrant. Notice of the result of a classification hearing before any appeal board is sent to the affected registrant's local board, which in turn, sends an appropriate notice to the registrant. Likewise, all orders for examinations and induction emanate from the local board, whether based on its own classification or one fixed by its superior agencies. This procedure does not, however, make the action of the appeal board that of the local board.

The "basis in fact" issue in a criminal action brought under the Act is solely a question whether the selective service file which was before the agency which considered the case most recently in point of time reflects a basis in fact to support the classification given by such agency, the classification on which the registrant's induction order is based.

In Cramer v. France, 9 Cir., 148 F.2d 801, the defendant seeking to set aside an induction order based on an appeal board classification, relied on evidence that the local board was prejudiced against him. The court said at pages 804–805: "In view of the fact that the hearing before the appeal board was de novo, United States v. Pitt, 3 Cir., 144

F.2d 169, * * * the prejudice of the members of the local board, if any, was not relevant to the record. * * * we think the trial court is right in its assumption that appellant, having taken an appeal from the local board to the appeal board and secured a ruling of the latter as to his classification, cannot now complain to the court concerning the conduct of the local board. The action of the board of appeals completely supersedes the action of the local board in classifying appellant, although the classification is the same." In Tyrrell v. United States, 9 Cir., 200 F.2d 8, certiorari denied 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346, the defendant contended that the local board, in summarizing for the file on appeal the oral evidence on which it had ruled in classifying the defendant as I–A, had omitted reference to the religious significance of certain work done by him. The file before the appeal board, however, contained documents relating to that subject. The court affirmed a judgment of conviction, saying in 200 F.2d at page 11: "It will be presumed that the Appeal Board gave consideration * * * to the entire file before it in evaluating the registrant's status and classifying him as I–A. Such action completely and finally supersedes the action of the local board in classifying Tyrrell, although the classification * * * is the same as that of the local board." To the same effect is Reed v. United States, 9 Cir., 205 F.2d 216, in which the defendant sought to introduce evidence of unfairness and misconduct of members of the local board at the time of defendant's personal appearance. So too, in Davis v. United States, 8 Cir., 203 F.2d 853, certiorari denied 345 U.S. 996, 73 S.Ct. 1138, 97 L.Ed. 1403, the court held that Davis could not attack collaterally in a criminal proceeding the appeal board classification on which his induction had been ordered, by alleging that prior action of the local board had denied him due process, saying in 203 F.2d at page 857: "[D]efendant's oral testimony that the local board did not listen or that it misbehaved towards him

at the time of his appearance before it, was not competent to avoid the [appeal board] classification. As stated by the Supreme Court in the Cox case [Cox v. United States], 332 U.S. [442] loc. cit. page 454, 68 S.Ct. [115] loc. cit. page 121, 92 L.Ed. 59, 'It seems to us that it is quite in accord with justice to limit the evidence as to status in the criminal trial on review of administrative action to that upon which the board acted'."

These authorities are persuasive that defendant's attack on the action of the local board must fail. The classification of the appeal board in each case cited merely continued the registrant in the same classification previously given by the local board. In the case at bar, defendant would have the court inquire whether a basis in fact existed to support a I–A classification which the Presidential Board has set aside as erroneous and superseded with its own and different classification on which the order for his induction was issued. Perhaps defendant's theory is that, without the reclassification into Class I–A by the local board, he would never have had occasion to appear before the superior body which ultimately gave him the inducible I–A–O. Whatever his theory, his argument misconstrues the power of the courts to review classification orders under the "basis in fact" principle.

What has been said disposes of the only issue before the court in No. 11222, namely, whether the court below erred in denying defendant's motion for a new trial, as well as defendant's principal argument in No. 11127. The newly discovered evidence on which defendant's motion for a new trial was based was relevant only to the question whether the superseded I–A classification given him by the local board rested on a basis in fact. For the reason previously stated, that issue was not before the court and the motion for a new trial was properly denied.

The order to report for induction was issued pursuant to the I–A–O classification given defendant by the Presidential

Board. The indictment charges disobedience to that order. The only question before us on this phase of the case, therefore, is whether defendant's selective service file which was before that Board affords a basis in fact for the classification which it gave him.

We have previously defined the scope of judicial review within the basis in fact concept in cases of this nature in United States v. Simmons, 7 Cir., 213 F.2d 901, 903. Applying the principles there announced in the case at bar we cannot say that the I–A–O classification on which defendant's induction order was based is without basis in fact.

In view of the dearth of authority involving the I–A–O classification,[1] it is well at the outset to explore the purpose of that classification. Section 6(j) of the Act contemplates two separate groups of individuals who, by reason of religious training and belief, are conscientiously opposed to participation in war. Those who are found by the selective service agencies to be opposed to both combatant and non-combatant service are subject to induction into civilian work which contributes to national welfare but are exempt from military service. Those who are found to be opposed only to combatant service are subject to induction into the armed forces for non-combatant service as defined by the President. 50 U.S.C.A.Appendix, § 456(j). The former group is embraced within the selective service classification I–O while the I–A–O embraces the latter group.

▮ Thus the classification I–A–O is designed to embrace those who are found to be conscientiously opposed to taking life or active participation in mortal combat, but not to service in support of others who do engage in combat. Inductees of this class are not required to bear arms but serve in the medical corps and other service units defined in Executive Order 10028.[2]

Defendant's file before the Presidential Board contains, in addition to his own professions of his religious beliefs, an elaborate summation of the history and tenets of the Harshmanites prepared by Rev. Leah L. Harshman, Pastor of the Church. The basic tenet of their faith is Christ's injunction to love thy neighbor as thyself. It is sad to relate that the sect's history records that, in obedience to their belief in this law of love, the congregation or certain of its members have suffered indignities varying from personal insults and destruction of property to physical assaults, apparently extending in one case to attempted murder, without raising a hand or voice in resistance by way of self help or resort to legal process. Such indignities are met literally by Christ's admonition to turn the other cheek. The members of the sect, described by one writer as "simple Tolstoyan non-resistors," are unalterably opposed to the use of force, and hold no malice toward those who do them harm. They do, however, recognize the importance of force as the ultimate instrument of the state to preserve itself. They recognize a duty of submission to the constituted authority of the state, "to render unto Caesar the things that are Caesar's," but refuse to participate

1. In the only reported opinion by a court of appeals involving the I–A–O classification, the Court of Appeals for the Ninth Circuit held that the failure of the registrant to assert that he was opposed to both combatant and noncombatant service and his emphasis in his Form 150 on opposition to combat and the use of carnal weapons were sufficient basis in fact for denying him the I–O and granting him the I–A–O classification. Rowland v. United States, 207 F.2d 621.

2. 14 F.R. 211. 50 U.S.C.A.Appendix, § 456 note. "(1) The term 'noncombatant service' shall mean (a) service in any unit of the armed forces which is unarmed at all times; (b) service in the medical department of any of the armed forces, wherever performed; or (c) any other assignment the primary function of which does not require the use of arms in combat; provided that such other assignment is acceptable to the individual concerned and does not require him to bear arms or to be trained in their use. "(2) The term 'noncombatant training' shall mean any training which is not concerned with the study, use, or handling of arms or weapons."

by voting or otherwise in the functioning of secular government, since thereby they would yoke themselves with those who do not accept the law of love and become responsible for the acts of those not so restrained by the Harshmanite teachings.

The sect, however, is not only a religious group but also a semi-self-sufficient industrial community within the vicinity of Sullivan. During World War I many members of the sect were discharged from employment, and businesses owned by the group's members were boycotted by the Sullivan community as a result, as alleged, of hatred and mistrust engendered by the group's resistance to the draft. As a result the church itself felt driven to assume the obligation of furnishing employment to its members. This it did by sponsoring a small manufacturing plant under the name and style of "Community Industries." Today it employs not only members of the church, but also a number of resident non-members. During World War II, a part if not most of the production of this factory was of material for the armed forces under government contracts.

The question before us is not, as defendant contends, whether or not it is reasonable to deny a registrant a I–O classification because his church on whose tenets his claim of exemption rests, though devoted to pacifist doctrines, contributed to the war efforts of this country by manufacturing supplies and equipment for the armed forces. The determinative question on the file before us is whether the Presidential Board might reasonably have considered these facts a basis for the I–A–O classification which it gave defendant. We must answer that question affirmatively. The record supports the conclusion that the conscientious objection to participation in war which is a basis of the Harshmanite teaching is opposition to the actual use of force, but does not extend to the remote activities of the many who aid and support others who engage in mortal combat. Like a leaf severed from the life giving branch, the combat forces of a nation at war would wither and die without the lifeline of supply extending from the factories through service troops to the actual battleground. Who can say, in comparing the role of service troops with that of manufacturers, whose service is more important to an overall war economy? Who can say that one group or the other bears the more intimate responsibility in prosecuting a war to conclusive decision? Can a real distinction be drawn, if the wearing apparel of the two groups be not taken into account? Our function does not extend to answering these questions, but their statement suggests the latitude of the conclusions permissible on consideration of defendant's file by the Presidential Board.

A second aspect of these facts, though little emphasized, lends support to the conclusion reached by the Board. That is the willingness, in the position taken by the Harshmanites, to profit from the remote activities of a wartime economy. When this facet is considered, the sect's beliefs inconsistent with participation in the armed forces are reduced to the professed unwillingness to "be yoked with" non-believers.

Harshmanite doctrine attempts to rationalize the seeming inconsistency in the dual position which this church has taken toward the wartime economy on considerations of responsibility. Thus the aloofness of the factory from the scene of combat is cited in support of the argument that the church merely manufactures products but does not accept the responsibility for their ultimate use since they are not directly involved in taking lives. It is not our function to evaluate this position. The weighing of the ultimate responsibilities arising out of the manufacture of materiel for the armed forces on the one hand against those arising out of non-combatant service on the other, is a question for the selective service agencies, not the courts. Thus defendant stated, "We do not consider ourselves responsible for what is done with the finished products which we manufacture since it is not directly involved in taking lives." The Presidential Board certainly could have concluded

that the expressed objection extends only to direct involvement in taking lives and might have believed as does counsel for the government that "Logic finds no more welcomed door to the I–A–O classification."

Defendant based his claim for exemption on the teachings of the Harshmanite church. The exhaustive history of that church and its tenets was placed in his file at his request, or by his Pastor on his behalf. He was aware of his associates' manufacturing activities, since he was a part of those activities as a factory worker throughout the period when he was prosecuting his claim. He steadfastly embraces all of its teachings and has at no time repudiated the stand taken by the church in the manufacture of war supplies. While each question of a claim of privilege must be determined on the evidence submitted by the particular registrant, United States v. Simmons, 7 Cir., 213 F.2d 901, 904–905, the teachings of a sect may be such that a registrant is placed in the anomolous position of being subject to an inductible classification unless he is willing to repudiate the doctrines of the church on whose teachings his claim of exemption rests. Since he makes the teachings of the church his own beliefs, the classification given him is an objective one based on such beliefs and is not subject to the charge of arbitrary discrimination against his religious sect as such. We cannot say that no basis in fact supports the classification which the Presidential Board gave defendant.

We must consider briefly the contentions that the local board's written summary of evidence considered by it was unfair and untrue and that the appeal board could not fairly consider defendant's claim because of this summary. Assuming the charge of unfairness to be true, we agree with the trial court that the defendant was not prejudiced thereby. He was given the opportunity to place whatever he desired in his file on appeal. His file before the board contained his statement of objections to this summary, in addition to some 24 pages of materials designed to prove error in the local board's classification. The Presidential Board did set aside the I–A classification and give defendant the I–A–O. This procedure conforms with Selective Service Regulation 1626.12, 32 C.F.R. § 1626.12, and the classification on which his induction order was based is not subject to collateral attack on this ground. Davis v. United States, 8 Cir., 203 F.2d 853, certiorari denied 345 U.S. 996, 73 S.Ct. 1138, 97 L.Ed. 1403; Tyrrell v. United States, 9 Cir., 200 F.2d 8, certiorari denied 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346.

We have considered the authorities cited by defendant; none of them militates against the conclusions expressed herein. For the reasons stated, we cannot say that defendant's I–A–O classification is without basis in fact or that error was committed by the trial court in defendant's trial.

Both judgments are

Affirmed.