**Richard Walter BURTON, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 22260.**

United States Court of Appeals Ninth Circuit.

Oct. 7, 1968.

Rehearing Denied Nov. 13, 1968.

Certiorari Denied Feb. 24, 1969.

See 89 S.Ct. 877.

J. B. Tietz (argued), Los Angeles, Cal., for appellant.

Dennis Kinnaird (argued), Asst. U. S. Atty., William Matthew Bryne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Crim. Div., Los Angeles, Cal., for appellee.

Before: BARNES and ELY, Circuit Judges, and THOMPSON,* District Judge.

THOMPSON, District Judge:

Classified I–O by his local board of the Selective Service System, Appellant was ordered to report to the Los Angeles County Department of Charities, Los Angeles, California, for civilian work. He appeared at the designated place of employment but refused all work offered. Prosecution and conviction for violation of the Universal Military Training and Service Act followed.

Appellant is employed as an animal keeper by the Los Angeles County Zoo. Defense witnesses testified without contradiction to his skill in this employment and the public importance of the work. Throughout the preliminary proceedings required by the regulations which culminated in the order to report for civilian work, Appellant offered his present employment as animal keeper as the type of civilian work he was willing to do and obdurately refused to consider or accept any other types of employment offered by the local board or state director. These acceptable employments are set forth in a list approved by the state director.

Appellant contends that the local board abdicated its statutory responsibility to consider and approve or disapprove work which the registrant offered to perform in lieu of induction into the military service. The record does not support this contention. On August 2, 1966, the registrant and a representative of the state director met with the local board, as required by the regulations, 32 C.F.R. 1660.20(c), in an effort to reach an agreement. Appellant's offer to work as an animal keeper for Los Angeles County was discussed and considered. The minutes of the meeting and the cover sheet show the following action by the local board: "The foregoing information together with the registrant's complete file was reviewed. The local board then determined that work as an Institutional Helper at the Los Angeles County Department of Charities, 1200 North State Street, Los Angeles, California is appropriate to be performed by the registrant and that such work is available." This designation of civilian work was approved by the Director of Selective Serv-

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

ice, as required by the regulations [32 C.F.R. 1660.20(d)].[1]

In this case we are not required to rely on Mang v. United States, 9th Cir. 1964, 339 F.2d 369, although it is sound authority for the proposition that there is no failure of due process or abdication of authority if a local board is guided by an approved list of acceptable civilian employments. We append as a footnote the full minutes of Appellant's meeting with the local board on August 3, 1966.[2]

1. "(d) If, after the meeting referred to in paragraph (c) of this section, the local board and the registrant are still unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the local board, with the approval of the Director of Selective Service, shall order the registrant to report for civilian work contributing to the maintenance of the national health, safety, or interest as defined in § 1660.1 which it deems appropriate, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in class I-O, unless he has volunteered for such work." 32 C.F.R. 1660.20(d).

2. "In re: BURTON, Richard Walter
                           August 3, 1966
SS No. 4 117 46 1953
"Registrant met with local board members and Major Miller, State Director's representative.
"PRESENT:   HOWARD STICKNEY
            JAMES ANDERSON
            MAJOR MILLER
"Board—Will you raise your right hand please? Do you swear any statements you make before this Board will be the truth, the whole truth, and nothing but the truth so help you God?
"Burton—I do.
"Major Miller—Mr. Burton, the local board placed you in Class I-O in April, 1966—you received a card notifying you of this classificiation did you?
"Burton—Yes.
"Major Miller—Now on May 19, 1966 the local board mailed you a form known as 'Special Report for Class I-O Registrants'.
"Burton—Yes.
"Maj. Miller—You returned that form listing places you had previously been employed and also where you are presently working—you returned it to the local board on May 31st.
"Burton—Yes.
"Maj. Miller—Following this on June 13, 1966 the local board mailed to you a letter listing three types of work—one was an institutional helper at Los Angeles County Department of Charities; second was truck driver helper at Goodwill Industries and the third was a psychiatric technician trainee at Atascadero State Hospital—do you recall this?
"Burton—Yes.
"Maj. Miller—You returned that and signed the statement you declined to accept any of the types of work listed—will you explain to the board why you declined to accept this work?
"Burton—Well because I felt the work I was doing and still am doing for the city of Los Angeles is more in keeping with my training and background and my abilities. I feel I am much more capable to help in the line of work I am in. Animal keeping is kind of a funny business. You have to work with the public and for the public. That is all important but there are other skills involved. I got these skills.
"Maj. Miller—Do you have any other objection to the three types of work the board offered you.
"Burton—No objection as far as I know —I don't think I could do those jobs with the same ability as this job.
"Major Miller—Do you think you could physically perform the type of work the board offered you.
"Burton—I don't know. I imagine I could drive a truck. I am not sure of the skills involved in the Atascadero job.
"Major Miller—I am talking about physically—do you think physically you could perform the type of work the board offered you.
"Burton—Yes I think so.
"Major Miller—Are there any other types of work you could offer the board other than the three offered you?
"Burton—I don't know I did not get a chance to look over the list the local board has because I could not get off work.
"Maj. Miller—You are employed by the city of Los Angeles?
"Burton—Yes.
"Maj. Miller—How many hours do you work?
"Burton—40.
"Maj. Miller—How much are you paid by the hour, or week or month?
"Burton—I am paid every two weeks and my take home I get about $180.00. I think it is $502.00 a month.
"Maj. Miller—There are other approved jobs throughout the State. This is a list

We think it demonstrates that the board did consider the employment offered by

Appellant. The minutes as a whole persuade us that the local board concluded

of them if you would like to look through them.

"(Registrant reads list of jobs).

"Burton—I don't know. You see what I did—both of these things were going on at the same time. I was trying to get this new job and I was being classified by you so I didn't know what was going to happen. I like the job very much. I imagine the hospital work would be closest to anything that I could come up with.

"Maj. Miller—Does it take a great real of patience when you are caring for sick animals?

"Burton—It depends on the animals.

"Maj. Miller—What about the cat family?

"Burton—Not too much. You don't run into any problems unless you have a fairly intelligent animal like monkey or apes.

"Maj. Miller—Do you think you could help a human being in a hospital—helping him return to health?

"Burton—I don't know. There is a gap between animal and man. You see with the animals at the zoo they are not all sick. It is a matter of caring for and feeding those that are not sick.

"Board—Mr. Burton, do you recognize the necessity of fulfilling your Selective Service obligation?

"Burton—Yes I do.

"Maj. Miller—Do you understand what would be the effect upon you if you refused this work of national importance?

"Burton—I have read it and I have thought about it.

"Major Miller—We will advise you and be sure you understand—if one is found guilty of violation of the Selective Service law as determined by the Courts, the maximum sentence is five years imprisonment and $10,000 fine—the indictment holds a felony record and with this felony record you could not hold a civil service job. I think you should know this so you would know which way to lean in your future life. Do you find anything interesting to you in the conscientious objector program in these other places throughout the State?

"Burton—I don't really see anything there either that I could take.

"Maj. Miller—There is nothing there you feel you would want to apply for? You probably would not find anything in there in animal keeping.

"Burton—That is what I was going to say. I don't think I could find anything

that would incorporate my skills as well as this line of work.

"Board—Are you probably holding out for employment in animal keeping?

"Burton—With fingers crossed yes. I can't see why not.

"Maj. Miller—If you were ordered to work of national importance to one of the places listed in the letter of June 13, 1966 as a conscientious objector, would you report to work?

"Burton—Yes—I don't know—I imagine I would appeal.

"Board—In April, 1966, you said you would.

"Burton—Yes I said I would but I would appeal for this particular job.

"Maj. Miller—Your appeal is all gone.

"Burton—On the chart outside it says —work contributing to national health, safety and interest and I can't see—

"Board—Do you realize that everybody's job could be classified as such by them personally.

"Burton—Well yes. In this job I am actually being paid by the people for performing my work.

"Board—You would be paid by the people if you went to service.

"Burton—When I became I-O I looked for work with the Government because I thought this would be as close as possible to this form of work.

"Board—We don't recognize all jobs working for the Government as fulfilling your service obligation.

"Maj. Miller—Will you read this statement please and see if you are willing to sign it.

"(Registrant reads statement).

"Burton—No I cannot sign this.

"Maj. Miller—That is alright. I have no further questions, gentlemen—do you have anything else to discuss with Mr. Burton?

"Board—I think Mr. Burton understands the situation quite well. I think he understood it when he was in here last April.

"Maj. Miller—You will hear from the board and the action taken at this meeting. Thank you for coming in.

"Burton—Thank you gentlemen.
　　　　　/s/ Mary L. Armand

"The foregoing information together with the registrant's complete file, was reviewed. The local board then determined that work as an Institutional Helper at the Los Angeles County Department

that caring for people in a hospital is in the national interest while caring for animals in a zoo is not. The board stated: "We don't recognize all jobs working for the government as fulfilling your service obligation." The law and regulations do not require offered employment to be accepted by the board simply because the employer is the government. 32 C.F.R. 1660.1(a) (1) provides that such work "*may* be considered" to be civilian work "contributing to the maintenance of the national *health, safety,* or *interest and* appropriate to be performed in lieu of induction." The record shows that the board assumed and exercised its responsibility.

Affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. Our courts are all too often presented with appeals by Selective Service registrants who have failed to cooperate with the Selective Service boards in their difficult task and who have, in many cases, refused to pursue their administrative remedies. Here, in direct contrast, we have a registrant who has cooperated with his local board and who has attempted in every available manner to obtain consideration of his request, made pursuant to the Selective Service Regulations. His local board has consistently refused to undertake the simple consideration of his request, and, as I see it, that constitutes an abdication of the duty imposed by the controlling Regulations.

On February 3, 1966, Burton was classified I–A (available for military service) by the local board. He then requested a personal appearance before the board in order to reassert his previously claimed status as a conscientious objector. This personal appearance, which occurred on April 7, 1966, resulted in Burton's reclassification to class I–O (conscientious objector available for civilian work contributing to the maintenance of the national health, safety, or

interest). During the personal appearance, the following exchange occurred:

"Board—Would you take a civilian job in lieu of induction into the armed forces?

"Burton—Absolutely.

"Board—Well the Government has provided other jobs that have nothing to do with the armed forces that you can do in lieu of induction. You would have to do this particular type of job for a particular time in lieu of going into the service.

"Burton—What kind of work is that? I have a friend driving a truck for Goodwill.

"Board—Yes it is work in an approved charitable organization.

"Burton—Right now I work for civil service.

"Board—Well that is not one of the jobs approved. Have you anything else to add?"

Subsequent to his reclassification, notice of which was mailed on April 7, 1966, Burton took the armed forces physical examination on May 5, 1966. On that same day, he wrote the local board and requested that he be allowed to fulfill his civilian work obligation through work as an animal keeper for the City of Los Angeles, this being the civil service job to which he had referred at the time of his personal appearance. It should be noted, in passing, that the animals being attended by Burton were the subjects of important medical study. The Government has not contested Burton's showing at the trial that this employment met the requirements for "appropriate" civilian work, as defined in the Regulations. 32 C.F.R. § 1660.1. Indeed, the evidence indicates that such employment appears on the State Director's list of approved employment in several states.

Burton's request to fulfill his obligation through employment as an animal keeper was received by the local board on May 6, 1966. Subsequently, a Statement

of Charities, 1200 North State Street, Los Angeles, California is appropriate to

be performed by the registrant and that such work is available."

of Acceptability regarding his physical examination was mailed to Burton on May 12, 1966. On May 19, 1966, the local board then mailed to Burton a special report form for conscientious objectors. This form requested that the registrant submit three types of work, types appearing on the State Director's "approved" list, which he would perform. In this report, received by the board on May 31, 1966, Burton reiterated his desire to continue in his work as an animal keeper in satisfaction of his civilian work obligation. He also noted that he had been unable to examine an "approved" list because of conflict between the hours when the board was open and the hours when he was required to be present at his job.

Following the board's receipt of this report from Burton, an employee of the board requested the State Director to select three types of "approved" jobs to be submitted to the registrant. Such a list was submitted to Burton on June 13, 1966, and Burton, in reply, again requested that he be allowed to perform his job as an animal keeper in satisfaction of his obligation. At this point, on August 3, 1966, Burton met with the local board and a representative of the State Director. The transcript of this meeting is set out in footnote two of the majority opinion. In my opinion, the conversation makes it apparent beyond dispute that the board was continuing to insist that Burton was limited to a choice from the State Director's list of approved employment.

The applicable Selective Service Regulations provide as follows:

"When a registrant in Class I–O has been found qualified for service in the Armed Forces after his armed forces physical examination or when such a registrant has failed to report for or to submit to armed forces physical examination, he shall, within ten days after a Statement of Acceptability (DD Form No. 62) has been mailed to him by the local board or within ten days after he has failed to report for or submit to armed forces physical examination, submit to the local board three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1, which he is qualified to do and which he offers to perform in lieu of induction into the Armed Forces. If the local board deems any one of these types of work to be appropriate, it will order the registrant to perform such work, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I–O, unless he has volunteered for such work."

32 C.F.R. § 1660.20(a).

"If the registrant fails to submit to the local board types of work which he offers to perform, or if the local board finds that none of the types of work submitted by the registrant is appropriate, the local board shall submit to the registrant by letter three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in § 1660.1 which it deems appropriate for the registrant to perform in lieu of induction. * * * "

32 C.F.R. § 1660.20(b).

The majority holds that the local board evaluated Burton's request with regard to whether work as an animal keeper qualified as "appropriate" civilian employment, as defined in the Regulations, 32 C.F.R. § 1660.1, and determined that it was not appropriate. Regardless of whether this specific job was an appropriate one—an issue which I do not here reach—I am absolutely unable to find any support for the majority's holding. In fact, it appears to me that the Government has conceded the contrary. In its statement of facts at the beginning of its brief, the Government admits: "The Board explained [at the meeting with Burton and the representative of the State Director] that it was refusing to accept appellant's request to perform his civilian work assignment at the Los Angeles City Zoo *for the reason that*

*it was not on the approved list provided by the State Director* * * *." (Emphasis added.) Later, in its written argument, the Government states that the issue in the *Mang* case, discussed infra, "was identical to the issue now before this Court; i. e., the Local Board relied on the State Director's list of approved organizations, and appellant charges this constitutes an abdication of the Local Board's duties; an illegal usurpation of authority by the State Director; and a denial of due process." Finally, a third example of the many statements in the Government's brief which support my belief as to the basis for the board's action may be found in the Government's assertion that "[i]t was immaterial that the work chosen was in the public interest, *the crucial factor was that it was not on the State Director's list of approved places of employment.*" (Emphasis added.)

The local boards must comply with, and should respect, the Selective Service Regulations. The relevant provision of those Regulations unambiguously states that before the board is to submit its own choice of work to the registrant, the *local board* is to *find* that none of the types of work properly requested by the registrant is appropriate. 32 C.F.R. § 1660.20(b). For an example of such a finding, see Jessen v. United States, 242 F.2d 213 (10th Cir. 1957). No finding was ever made by the local board in Burton's case. Indeed, it was not even the local board that formulated the "approved" list upon which the board placed its total reliance.

Two court of appeals decisions may be cited in support of the proposition, advanced by the Government, that the board may rely totally upon the "approved" list to the exclusion of any finding made on its own behalf. The most recent of the two cases is from our own court. Mang v. United States, 339 F.2d 369 (9th Cir. 1964). There a registrant requested work at one of the three "ap-

proved" jobs submitted by the board, but he soon quit. The board then submitted three more jobs to him, in response to which the registrant requested that he be ordered to work at another job which was not on the "approved" list. The local board refused this request because the job did not appear on the State Director's list. Our court affirmed. Apart from direct reliance on, and extended quotation from, the second of the above-mentioned two cases, discussed *infra,* the *Mang* opinion in this connection relied only upon the assertion that "the problem of what type of civilian work is to be undertaken by a '1–0' registrant is *finally* to be determined by the National Director of Selective Service." 339 F.2d at 370 (emphasis in original). I have become convinced that the statement was incorrect as a generalization and is incorrect as applied to the case before us. As the Regulations make abundantly clear, the Director of Selective Service has no connection with the selection of civilian work for a registrant until *after* the *local board* has made a *finding* with regard to the registrant's requested employment and *after* the registrant has refused to perform any of the appropriate employment opportunities submitted to him by the local board. 32 C.F.R. § 1660.20.

In United States v. Lawson, 337 F.2d 800 (3d Cir. 1964), cert. denied, 380 U.S. 919, 85 S.Ct. 913, 13 L.Ed.2d 804 (1965), the registrant requested that he be allowed to fulfill his civilian work obligation through employment with Goodwill Industries. Despite the fact that Goodwill Industries at that time appeared on the "approved" lists in many states and had, several years previously, appeared on the list in the state involved, the local board rejected the request because the job was not on its current "approved" list. The Third Circuit upheld the board's action in an opinion which, as I read it, does not clearly define the basis of the court's reasoning.[1] In any event, the

---

1. The crucial portion of the Third Circuit's opinion reads as follows:
"[The registrant] asserts that the Board utilized lists of employers trans-

mitted to it by the National and State Selective Service authorities and made its order pursuant to the suggestion by them. In this, appellant contends the

court did not discuss the relevant provisions of the Selective Service Regulations which I have set forth above.

The majority here states that *Mang* "is sound authority for the proposition that there is no failure of due process or abdication of authority if a local board *is guided* by an approved list of acceptable civilian employment." (Emphasis added.) I have no quarrel with this proposition. Certainly, it is desirable that the local board be aided in its difficult task by whatever sound *guides* may be made available to it by the state and national Selective Service authorities. See 32 C.F.R. § 1621.14; cf. Tyrrell v. United States, 200 F.2d 8, 13 (9th Cir. 1952), cert denied, 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346 (1953) (list of recognized theological or divinity schools to be used as a classification guide, rather than as an inflexible standard). My only objection is that, when the Regulations have otherwise been observed, the local board *is not bound* by such guides and must itself assume the final responsibility where, as here, the Regulations specifically direct that the ultimate finding be made by the local board. This is as it should be, for I cannot reasonably assume that each State Director's list will necessarily include every type of employment which may be available within the particular state and which is "appropriate" under the definition of the Regulations. 32 C.F.R. § 1660.1.

Finally, I respectfully submit that *Mang* and *Lawson* are not controlling in our case. This is because of a factor which, while not considered by the parties in their briefs, is one to which I attach the utmost significance. In *Lawson* the registrant was ordered to take his physical examination on August 2, 1961. On August 1, 1961, he notified the local board that he would not appear for that examination, and, in fact, he did not take the examination. Subsequently, on October 17, 1961, the board submitted to the registrant three appropriate jobs. This was done pursuant to the Regulations. 32 C.F.R. § 1660.20(b). Still later, after a number of further contacts with the registrant in connection with appropriate employment, the local board, on August 7, 1962, directed that the registrant report to a New Jersey state-operated hospital to fulfill his two-year obligation. Finally, on the same date, August 7th, the registrant wrote to the board and *for the first time* requested that he be allowed to fulfill his obligation through employment with Goodwill Industries. Thus more than a year had passed between the date when the registrant was to have submitted to the physical examination and the date of his request for approval of employment at Goodwill Industries in satisfaction of his obligation.

In *Mang* the civilian-employment procedure had been carried by the board and the registrant to the point where the reg-

Board abandoned its duty to exercise its own discretion which, he submits, excuses him from compliance with the directive of the Board that he take employment with the New Jersey State Hospital at Greystone Park. Indeed, he goes so far as to doubt the constitutionality of the regulation limiting the employers to public or non-profit agencies asserting that those engaged in private enterprises are fully as contributive toward the public welfare as nonprofit agencies.

"But the appellant makes no suggestion that the proposed employers [submitted to the registrant by the board prior to his request] were unfit. Were this the case and it was shown that the Board permitted its discretion to be dominated by suggestion of employers, illegally contrived, there might have been some ground to his contention. However, when the dust cloud of these objections settles, it becomes apparent that the Board, by permitting itself to be guided in the selection of the proposed employer of this conscientious objector, abandoned none of its autonomy with which the Selective Service Act vested it. Indeed, it is difficult to understand how uniformity of treatment of all conscientious objectors with regard to engagement in public welfare work could otherwise be practiced."

United States v. Lawson, 337 F.2d at 816.

istrant had actually begun performance of appropriate employment pursuant to a valid order of the board. Shortly after entering into this performance, however, the registrant quit the employment, allegedly due to illness. Five months thereafter, the board submitted to the registrant three new choices of appropriate employment, since the registrant had yet to fulfill his two-year civilian-employment obligation. Following this action of the local board, the registrant, *for the first time*, requested that he be allowed to fulfill his work obligation in employment specified by him. As indicated previously, the board refused this request on the ground that the job did not appear on the "approved" list.

Section 1660.20(a) of the Regulations, quoted supra, specifically requires that the registrant submit his request for appropriate employment which he offers to perform *within ten days* after the mailing of a Statement of Acceptability to him *or within ten days* after he fails to take his armed forces physical examination. It is upon this request, which must be made before the ten-day period expires, that the local board is required by the Regulations to make a finding. In both *Mang* and *Lawson*, the registrant's first request came long after the ten-day limit had expired. Thus in neither of those cases was the request properly made pursuant to the Regulations, and, therefore, in neither case was the board required by the Regulations to consider the registrant's request.

The situation in Burton's case is far different. As related previously, Burton took the armed forces physical examination on May 5, 1966. His request to fulfill his obligation through employment as an animal keeper was written on that same day, presumably after he learned that he had passed the examination, and the request was received by the local board on May 6, 1966, one day later. A Statement of Acceptability, dated May 5, 1966, was mailed to Burton on May 12, 1966. Thus, without question, Burton complied with the requirements of the Regulations, and the local board was

therefore under a corresponding duty also to abide by the Regulations by independently making the required finding as to the appropriateness of the specific employment which Burton had properly requested. The local board failed to perform its duty, and its failure resulted from its erroneous belief that the State Director's list operated to restrict, and even confine, the free exercise of its lawfully vested discretion.

I would reverse.