### MINTZ v. HOWLETT.
### No. 77, Docket 22817.

United States Court of Appeals
Second Circuit.

Argued Oct. 8, 1953.

Decided Oct. 27, 1953.

Albert Finkelstein, New York City (Jacob W. Friedman, New York City, on the brief), for relator-appellant.

Harold J. Raby, Asst. U. S. Atty., New York City (J. Edward Lumbard, Jr., U. S. Atty., New York City, on the brief), for respondent-appellee.

Before CHASE, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Stanley Mintz, petitioner for a writ of habeas corpus and relator herein, was originally classified 3–A as a married man on April 1, 1949, upon registering for military service as required by the Selective Service System. On October 4, 1951, he was reclassified 1–A after a change in the regulations making married men without children no longer exempt from immediate service; but on March 4, 1952, he was again classified 3–A by reason of his wife's pregnancy, after having filed with his local board on February 25, 1952, a physician's certificate of his wife's pregnancy, as required for deferment under 32 CFR § 1622.30 (c) (2). His deferment was to October, 1952, that being the time of the expected birth of his child. On November 13, 1952, the local board again classified him as 1–A and notice to that effect was mailed him on November 18. On November 20 he notified the board of appeal from his 1–A classification. On November 21 he was mailed notice of his induction, to take place on December 10; this he received on November 22. On November 24 he filed with the board a doctor's certificate to the effect that his wife "had a spontaneous miscarriage. She conceived again immediately after this. She is pregnant at present and expects to give birth in January 1953." The above facts appear in the record before us on appeal; petitioner's further statement in his brief that "She actually did give birth in January, 1953, and is presently the mother of a 7-month old child" is not challenged.

It appears further that petitioner on December 2 sought a hearing which was accorded that day. The handwritten minutes of the board (over a signature not decipherable) appear on the cover sheet of petitioner's classification questionnaire as follows:

"12/2/52. Registrant appears. Hearing held. Registrant did not inform board of miscarriage claimed. Miscarriage occurred in Feb. 1952. III A on basis of pregnancy mailed 3/4/52 but Board not informed. I A continued. Recommend to Hq. that induction be postponed to give registrant opportunity to appeal. He did not receive his hearing prior to issuance of induction notice & postponement is recommended only to prevent possible illegal induction."

Thereafter petitioner took, or there were taken in his behalf, various appeals which are more fully referred to below; these being decided against him, he was ordered to and did report for induction June 25, 1953. Thereupon he sought this writ of habeas corpus to test the validity of his induction, and now appeals from its dismissal by the district court.

The meagerness of the official record made by the local board in this case is a prime source of difficulty in adjudication. Of course we cannot expect of lay boards such adequate records as we can require of courts of law, and we are disposed to read every reasonable intendment into the record which may seem fairly to support and sustain the board's actions. Nevertheless, we must try to piece together the brief reports made to ascertain with proper care whether or not the legal requirements have actually been fulfilled. And we are constrained to hold that they have not.

Before passing to the two major points made on behalf of the respondent, the detaining Major, by the United States Attorney we should notice one perhaps lightly stressed by quotation from a case, but apparently pervasive with the draft boards and perhaps explaining the haste to induct petitioner after his reclassification in November, 1952. In Hirsh v. Adair, D.C.E.D.Pa., 113 F.Supp. 116, 118, the court said of a registrant in somewhat similar, but not identical, posture with petitioner here:[1] "It appears that the registrant probably realized, also, that if he had notified the Board that his wife was pregnant again within two months of the miscarriage the Local Board might have treated the new pregnancy as an effort to escape induction and in its discretion would have refused a reclassification to 3A based on the new pregnancy."

But we find nothing in the Selective Service Regulations which in any way justifies a local board in inquiring into the nature of a pregnancy to determine whether it is "an effort to escape induction" or is otherwise to be frowned upon. Such an inquiry would surely be weird, if not against public policy, and seems clearly against the spirit of the regulations.[2] We have no doubt that on the conceded facts of pregnancy in November, 1952, petitioner was then entitled to deferment under 32 CFR § 1622.30(c) (2), supra, unless it was properly to be denied under other specific regulations.

The United States Attorney does rely upon such regulations to assert (1) that petitioner's claim for deferment was not made in time, and (2) that in any event he was properly inducted as a delinquent registrant for failure to keep his board informed of his status with respect to the draft. The first is based on the regulation just cited, which provides for the deferment only if the certificate of pregnancy is filed "prior to the time the local board mails him an order to report for induction." And the second is based upon the regulation requiring a registrant to report "within 10 days after it occurs" any fact that might result in his being placed in a different classification, such as "any change in his * * * marital * * * or dependency status," 32 CFR § 1625.1(b), with resulting delinquency on failure, id. § 1602.4, authorizing the board to classify the delinquent as 1-A, subject to early call for induction, but with the usual right of appeal, id. §§ 1642.12–14.

Here respondent relies upon the fact that notice of induction was actually given petitioner before he filed the cer-

---

[1] Unlike petitioner here (as we hold), the registrant there was definitely at fault in failing to take timely steps to protect himself by way of appeal or request for reclassification.

[2] Care is taken to see that the fact of pregnancy is established, but nothing else is required. Thus in late 1952 the regulation in question was amended to add to the requirement that there be filed with the local board "the certificate of a licensed physician stating that the child has been conceived," the following: "the probable date of its delivery, and the evidence upon which his positive diagnosis of pregnancy is based." 32 C.F.R., 1952 Supp. § 1622.30(c) (2).

tificate of pregnancy. It should be noted that the right of appeal generally—and specifically on reclassification—is exercisable within 10 days, as is his right to appear before his local board on request; and induction is to be postponed during that period. 32 CFR §§ 1624.1, 1624.3, 1625.13, 1626.2(c) (1), 1626.41. Petitioner argues with much force that a registrant is entitled to the full period of 10 days before his case can be prejudged, so to speak, by notice of induction, even if the actual induction is to occur on a date beyond the period; and that was the holding in United States ex rel. Berman v. Craig, D.C.N.J., 107 F. Supp. 529, now said to be on appeal to the Court of Appeals for the Third Circuit. Petitioner also relies on certain directives—considered by respondent to be directives and nothing more—by the New York City Headquarters of the Selective Service System requesting local boards "to refrain from ordering any man for induction until his 10 day period for hearing and/or appeal has expired." Weekly Letters Nos. 4, 94, 105, April 26, 1951, January 22, 1953, April 9, 1953. But we feel we do not need to pass upon this interesting question, because it seems to us quite clear that the appeal which petitioner actually took before the notice of induction was mailed raised the entire issue. As we shall now proceed to discuss, the whole case for his reclassification 1–A turns upon the issue of his delinquency; and his appeal from his reclassification necessarily raises that issue.

The issue of delinquency must rest, as the parties essentially concede, upon the petitioner's having failed, with knowledge, to disclose to the board the miscarriage his wife had suffered. Respondent asserts, as is stated in the minutes of the board quoted above, that this occurred in February, 1952; and this we may accept as fact for the purpose of our discussion, although the record contains no evidence whatsoever on the matter and the conclusion may be based on nothing more than a shrewd surmise. Respondent then draws the further deduc-

tion that petitioner knew or must have known of the fact at once and hence was in default from then on for failing to inform his board. But this assumes the crucial point in issue, which should have been the subject matter of the board's hearing and of an explicit finding. True, we are met with contrary statements dehors the record which at best serve to confuse. Petitioner in his brief says that he did not know of these facts until informed by his doctor by reason of the delayed pregnancy in November, 1952; while the United States Attorney quotes an unsworn clerk of the local board as recalling that petitioner "advised the board, at the December 2, 1952 hearing, of the fact of his wife's miscarriage in February 1952, stating that he did not think he was obliged to report the occurrence to the board." All this, like the minutes quoted above of the board's meeting, is hazy and ambiguous as to just when and under what circumstances petitioner learned of his wife's true condition and diagnostic history. Possibly, although this is not made explicit, we are being asked to take judicial notice of medical facts which would necessarily convict the petitioner of concealment originally and falsification now; but we know of no basis for such extensive knowledge on our part. We think the record must stand, with the basic fact upon which delinquency must be rested not found and indeed in substantial doubt and with no real evidence on the point at any place in the record.

Can the hearing held on December 2, 1952, and the board's record of it supply the deficiency? There are two basic reasons why it cannot. First, the hearing does not supply the crucial finding as to petitioner's knowledge of his wife's miscarriage, or even indicate that the point was explored in the evidence. And second, it does not appear that the hearing was directed to this prime question at all, but was rather, as the minutes state, to guard against illegality in the induction by lack of hearing or opportunity to appeal prior to issuance of the induction notice. There is no sugges-

tion anywhere that the board intended or purported to re-examine its reclassification of petitioner. Unless the hearing was directed to that issue, or specifically to the essential claim of delinquency, it could have no bearing upon the outcome. The petitioner therefore did not have the hearing which he was entitled to for the presentation of his case.

■■ Likewise the action of the Appeal Board Panel No. 3 in affirming the reclassification on January 12, 1953, does not improve the case. We have ruled in common with other courts that a registrant is entitled to a full and fair disposition of his contentions at every level of operation of the Selective Service System and that a review by an appeal board may not serve to supply a deficiency in a fair hearing by the local board. United States v. Fry, 2 Cir., 203 F.2d 638, 640; United States v. Stiles, 3 Cir., 169 F.2d 455, 459; Davis v. United States, 6 Cir., 199 F.2d 689, 691; Knox v. United States, 9 Cir., 200 F.2d 398, 401–402. Moreover, it appears that the appeal board assumed the crucial fact in issue. For after stating that in February, 1952, "the wife suffered a miscarriage, of which the registrant failed to notify the Local Board," it went on to hold: "Registrant's concealment from the Local Board of the wife's miscarriage was a clear violation of section 1625.1(b) of Selective Service Regulations. Because of such violation, the Local Board was empowered to officially report the registrant as a delinquent (Section 1602.4), which it did on December 2, 1952; therefore it could classify the registrant 1–A notwithstanding his wife's later pregnancy. (See Section 1642.12, which provides that delinquent registrants may be reclassified into 1–A 'regardless of other circumstances.') That his failure to advise the Local Board of his wife's miscarriage

may have been due to ignorance, or was inadvertent and not willful, is, of course, immaterial, though it bears every earmark of having been deliberate." In addition to its failure to appreciate this lack of a basic finding of fact, the holding clearly represents a *post-hoc* rationalization along lines of what the local board might have thought and done had it been astute to "protect its record." Actually, as we have seen, at no time did the local board find or "officially report" the registrant as a delinquent; nor did it show that it ever received evidence upon or considered the subject.

After the decision of the Appeal Board Panel, Colonel Candler Cobb, New York City, Director of the Selective Service System, made a careful review of the case and decided to take an appeal to the National Appeal Board. That board by vote of 2 to 1 decided in favor of the 1–A classification on May 28, 1953. It stated no reasons; obviously its action did not cure the defects in petitioner's induction. We conclude that petitioner has been denied procedural due process, Davis v. United States, supra, 6 Cir., 199 F.2d 689, and that the order of reclassification is a nullity. United States v. Pekarski, 2 Cir., 207 F.2d 930; Annett v. United States, 10 Cir., 205 F. 2d 689; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. Petitioner must therefore be discharged. In re Abramson, 3 Cir., 196 F.2d 261, 264. This conclusion makes inappropriate or unnecessary the grant of relief sought by respondent by motion for leave to the Secretary of the Army to intervene as party respondent and for vacation of a stay against military transfer of the petitioner heretofore granted by a judge of this court; respondent's motion is accordingly denied.

Reversed and remanded for the sustaining of the writ.