**UNITED STATES ex rel. REMKE**

v.

**READ.**

**Civ. No. 2795.**

United States District Court
W. D. Kentucky, at Louisville.

July 23, 1954.

Marion W. Moore, Blakely, Moore & Blakely, Covington, Ky., Charles F. Wood, Peter, Heyburn & Marshall, Louisville, Ky., for petitioner.

J. Leonard Walker, U. S. Atty., Louisville, Ky., for respondent.

SHELBOURNE, Chief Judge.

This action was instituted by the petitioner Walter William Remke filing his petition June 24, 1954, seeking a writ of habeas corpus. The respondent named in the complaint was Major General John H. Collier, then the Commanding

Officer at Fort Knox, Kentucky. Shortly after June 24, 1954, General Collier was succeeded as Commanding Officer by George W. Read and General Read was substituted as the respondent.

Trial was had to the Court July 8, 1954 and from the testimony adduced at the trial, the Court makes the following—

Findings of Fact

1. Walter William Remke, now a member of the United States Army and stationed at Fort Knox, Kentucky, registered under the provisions of the Selective Service Act, 50 U.S.C.A.Appendix, § 451 et seq. September 11, 1948 and on November 20, 1948, was classified as I–A. January 4, 1949, he was classified as II–A. On September 15, 1949, he was re-classified in I–A and on July 21, 1950, underwent a physical examination, as a result of which on November 10, 1950, he was classified as IV–F. This last classification was due to the petitioner having suffered the amputation of the upper two-thirds of the index finger of his left hand.

This classification was in accord with the requirements of the physical standards in effect at the time petitioner was classified.

Petitioner married May 17, 1952 and a child was born to the marriage July 30, 1953. January 19, 1954, the petitioner was re-classified in I–A, this classification resulting from a change in the standards of physical fitness prescribed by the Army. Petitioner prosecuted an appeal from the classification January 19, 1954, placing him in I–A, claiming at that time that he was entitled to be classified as III–A, because of the provisions of Regulation 1622.30, which regulation was issued on the 17th of July 1953. It provides—

"Class III–A: Registrant With Child or Children: and Registrant Deferred by Reason of Extreme Hardship and Privation To Dependents.—(a) In Class III–A shall be placed any registrant who prior to August 25, 1953, has submitted evidence to the local board which establishes to the satisfaction of the local board that he has a child or children with whom he maintains a bona fide family relationship in their home. Such a registrant shall remain eligible for Class III–A so long as he maintains a bona fide family relationship with such child or children in their home."

Petitioner's appeal resulted in confirmance of his I–A classification by the Local Board and the vote of the Appeal Board was unanimous, four affirmative to no negative votes.

2. July 31, 1953, Albert J. Rebstein, a member of Local Board No. 50 at Covington, Kentucky, made a business call upon petitioner's Father and at his place of business where petitioner worked. Upon this occasion, petitioner gave Mr. Rebstein a cigar, symbolic of petitioner's pride in the birth of his first child and asked Mr. Rebstein whether the birth of his child would have any effect upon his draft status, to which Mr. Rebstein replied that he did not know what, if any effect the birth of the child might have on his draft status, but that he (Mr. Rebstein) "would take care of this matter" for the petitioner.

Mr. Rebstein produced at the trial his diary upon which appeared a notation about the birth of petitioner's daughter and his desire to purchase and send petitioner's wife a baby book. Mr. Rebstein consummated this intention by instructing his Secretary, who testified in the case, that she purchase and send the baby book on the following day—July 31, 1953—which she did. However, Mr. Rebstein appears to have completely forgotten his statement to the petitioner that he would "take care of" advising petitioner whether the birth of his daughter would have any effect upon his draft status.

Mr. Rebstein testified that some time in April 1954, he was on vacation in Florida and around a young man giving another person a cigar in celebration of the birth of his child and that this recalled to his mind the occurrence with Remke and his promise to him to take

274

care of ascertaining what effect the birth of his child would have upon his draft status.

3. In the meanwhile, on August 19, 1953, petitioner received a mimeographed letter Form M–39 from his local board, advising him that he had been and was then classified as IV–F, but that he should notify the board of any change in his status which might affect his classification.

Petitioner testified that at that time he did not know that August 25, 1953 had been fixed as the last day the Local Board could be notified concerning the birth of his child to have the effect of classifying him as III–A.

4. On September 10, 1953, by letter the petitioner notified Local Board No. 50 of the birth of his child, and added to the information concerning the birth of his child "I don't believe this has been previously reported to the Board."

On January 22, 1954, after being classified as I–A, petitioner requested an appeal, claiming the right to a III–A classification because he was then married and had a child, but in his letter requesting the appeal, he said, "I was late in notifying the Draft Board of my marital status."

5. April 19, 1954, was the first time that there was contained in petitioner's file with Local Board No. 50, written evidence that on July 31, 1953, he had notified Mr. Rebstein of the birth of his child and had been told by Mr. Rebstein that he would "take care of the matter" for petitioner.

6. There appears in the file a letter written by E. H. Walton, Government Appeal Agent for Local Board No. 50, under date of May 17, 1954, to Colonel Solon F. Russell, State Director, recommending that petitioner be granted an appeal from the order of the local board re-classifying him in I–A.

Mr. Walton testified at the hearing and at that time, as well as in his letter, he stated in substance that in his opinion the notice given to Mr. Rebstein by petitioner on July 31, 1953, was just as effective as if it had been given to the Board in a public meeting, inasmuch as Mr. Rebstein was an integral part of the Board and certainly its agent to receive information for the Board the same as a Clerk "or other person would be."

Mr. Walton refers to the fact that notice on Form M–39, forwarded to the petitioner on August 19, 1953, made no mention of the regulation requiring registrants, claiming deferred classification because of the birth of dependent children, to advise the Board of such by August 25, 1953.

Conclusions of Law

I. The sole question in the case is whether the actions, decisions and determination of the Local Board and of the State Director of Selective Service, in refusing to place petitioner in Class III–A, was arbitarary and discriminatory. This constitutes the grounds relied upon in the petition.

II. The registrant is entitled to a full and fair disposition of his contentions at every level of operation of the Selective Service System. Davis v. United States, 6 Cir., 199 F.2d 689, Mintz v. Howlett, 2 Cir., 207 F.2d 758. Registrants are not to be treated as though they were engaged in formal litigation, assisted by Counsel. United States ex rel. Berman v. Craig, 3 Cir., 207 F.2d 888; Smith v. United States, 4 Cir., 157 F.2d 176.

The Government leans heavily upon Regulation 1623.1(b), providing "under no circumstances shall the local board rely upon information received by a member personally unless such information is reduced to writing and placed in the registrant's file".

Mr. Rebstein, it must be remembered, is a member of the Local Board, and this case is unique, so far as my investigation reflects, in that a member of the Local Board is unequivocably supporting the registrant's contention. He frankly says that he forgot his promise to the registrant to convey to the Local Board notice of the birth of his child and to advise the registrant as to what effect, if any, the birth of that child would have upon his classification. He subsequently re-

membered the conversation and seasonably placed in the file his affidavit to the effect that he had made that statement to the registrant. Were the registrant's contention not supported by Mr. Rebstein's affidavit and testimony, the case would not be troublesome, but with Mr. Rebstein's unqualified statement that he promised registrant to take care of the matter for him, it seems that the Board acted arbitrarily.

This statement is made with the realization that Courts are reluctant to interfere with the action of local boards under the Selective Service System, and that where there is a foundation of fact upholding the classification, the Court has no authority. The question presented here is difficult, but on the whole question, it appears to me that the registrant is entitled to the relief sought.

Accordingly, an order is entered this day, requiring the respondent to release from its custody and discharge from the United States Army the petitioner Walter William Remke.

Petitioner is directed to report to Local Board No. 50, Kenton County, Kentucky, for further classification upon his file, with the information now contained therein.