**Wayne Myron BISHOP, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 22795.**

United States Court of Appeals Ninth Circuit.

June 19, 1969.

Robert C. Mussehl (argued), Seattle, Wash., for appellant.

William H. Rubidge, Asst. U. S. Atty., (argued), Eugene G. Cushing, U. S. Atty., Seattle, Wash., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and HAMLEY and ELY, Circuit Judges.

ELY, Circuit Judge:

Bishop appeals his conviction for having refused to submit to induction under the Universal Military Training and Service Act, 50 U.S.C. App. § 462. He asserts that the Selective Service System applied erroneous standards and that, accordingly, the denial of his conscientious objector claim for exemption was without a "basis in fact." The District Court specifically rejected these contentions, and so do we.

The events surrounding Bishop's conviction are not in dispute. He registered with Local Board No. 29 at Port Angeles, Washington, on November 8, 1963. After reviewing his initial Classification Questionnaire (SSS Form No. 100), the local board placed him in class I-S until the expected date of his high school graduation. Following that graduation, in June 1964, the local board classified Bishop as available for military service (class I-A). Thereafter, in April 1965, Bishop requested and received a Special Form for Conscientious Objectors (SSS Form No. 150) which he promptly completed and returned. After reviewing the information supplied in that form, the local board again classified Bishop I-A and granted his subsequent request for a personal appearance to contest this classification. Bishop appeared before his local board on June 23, 1965, but failed to convince any of its members that his claim was meritorious.

When the appellant sought review of this final rejection by Local Board No. 29, his entire file was transferred to the Selective Service Appeal Board for the Western District of Washington. On July 26, 1965, the appeal board reviewed the registrant's file and tentatively decided that he should be denied his claimed exemption. Before making a final determination, however, the appeal board asked the Department of Justice to investigate Bishop's claim and render an advisory opinion pursuant to Selective Service Regulations.

Acting on this request, the Department of Justice authorized one of its Hearing Officers, Mr. Arnold Robbins, to conduct an investigation. After reviewing all the information in the Selective Service file and conducting extensive interviews with the registrant and at least nine members of the small community in which Bishop resided, Robbins submitted his final report. This report, recommending denial of the claimed exemption, was referred to T. Oscar Smith, Chief of the Department of Justice's Conscientious Objector Section. Smith agreed with the Robbins recommendation and, on November 4, 1966, notified the registrant's appeal board that the Department of Justice advised against granting Bishop military exemption as a conscientious objector. The appeal board immediately sent Bishop a copy of the Department of Justice recommendation to provide him with the opportunity to respond to findings which he might consider unwarranted. When Bishop failed to respond, the appeal board affirmed its initial decision, and Bishop was notified that his appeal had been unsuccessful. Thereafter, when the local board issued an Induction Notice, Bishop refused to submit and the judicial proceedings leading to the instant appeal commenced.

The foregoing summary discloses that Bishop was afforded every opportunity within existing Selective Service Regulations to prove the merit of his conscientious objector claim. Having failed at each successive stage of these proceedings, he now seeks to overturn their results by insisting that erroneous legal standards were adopted and applied by his local board, his appeal board, and the Department of Justice.

■ Initially, we must reject Bishop's assumption that were we to decide that incorrect standards were applied by his local board, reversal is required. That question was settled in Tomlinson v. United States, 216 F.2d 12 (9th Cir. 1954), *cert. denied*, 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755 (1955), wherein we explained that it is the very purpose of the appeal board to correct any local board errors by making its separate in-

vestigation of the registrant's file and an independent classification decision. *See also* Storey v. United States, 370 F.2d 255 (9th Cir. 1966); DeRemer v. United States, 340 F.2d 712 (8th Cir. 1965). Accordingly, we limit our scrutiny to the standards applied by Bishop's appeal board.

Bishop attacks the appeal board's determination in an indirect fashion. He insists that the Justice Department's unfavorable recommendation rests upon illegal grounds which invalidate the board's ultimate decision under the teachings of Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955) and Shepherd v. United States, 217 F.2d 942 (9th Cir. 1954).

In *Sicurella* the petitioner, a member of Jehovah's Witnesses, had been denied classification as a conscientious objector when the Department of Justice, although admitting the sincerity of the petitioner's beliefs, recommended denial of his claim because of his admitted willingness to fight in defense of "his ministry, Kingdom Interests and * * * his fellow brethern." The Supreme Court held that the petitioner's expressed willingness to fight "theocratic wars" did not, *per se*, invalidate his claim and that since the appeal board likely relied upon an erroneous opinion to the contrary, the conviction should be reversed.

> "[T]he Department of Justice * * * clearly bases its recommendation on petitioner's willingness to 'fight under some circumstances, namely in defense of his ministry, Kingdom Interests, and in defense of his fellow brethren,' and we feel that this error of law by the Department, to which the Appeal Board might naturally look for guidance on such questions, must vitiate the entire proceedings at least where it is not clear that the Board relied on some legitimate ground. Here, where it is impossible to determine on exactly which grounds the Appeal Board decided, the integrity of the Selective Service System demands, at least, that

the Government not recommend illegal grounds."

348 U.S. at 392, 75 S.Ct. at 406.

Similar logic was employed by our court several months before the *Sicurella* decision. Shepherd v. United States, *supra*. *See also* Batelaan v. United States, 217 F.2d 946 (9th Cir. 1954). In *Shepherd,* the Department of Justice recommended against the registrant's exemption and advised the appeal board that notwithstanding his sincerity, Shepherd's claim could be denied simply because he would willingly engage in theocratic wars. Noting that the appeal board was not bound by the Department's recommendations, 32 C.F.R. § 1626.25 (c), our court recognized that the board's classification may have properly rested on the belief that Shepherd was insincere. Nevertheless, we concluded that it was equally probable, if not more probable, that the appeal board was greatly influenced by the Department's categorical statement "that even if the registrant was sincere he could not be exempted because of his expressed beliefs relating to self defense and theocratic wars." 217 F.2d at 945. Hence, since under such circumstances we believed it impossible to presume that the board acted permissibly, Shepherd's conviction was reversed.

■ The ultimate question in a conscientious objector case is, of course, the sincerity of the registrant's objection to participation in war. Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955). In the instant controversy, a portion of the Department's recommendation recites "that in view of the registrant's apparent intellectual capacities it may be doubtful whether he is capable of formulating or adhering to a set of beliefs." By taking this language from its context, Bishop insists that the Department of Justice equated the term "belief" as found in the exempting statute with "knowledge" and thereby adopted a standard other than sincerity by

which to judge his claim to exemption. We do not agree.

▆ Bishop did not claim to have been a conscientious objector from his early childhood; rather, in his Form No. 150, he explained that his views had materialized from bible study with Jehovah's Witnesses. Therefore, since Bishop claims to have derived his beliefs through exercise of his intellect, his inherent ability to formulate such thoughts are relevant to the honesty and sincerity of the asserted beliefs. In these circumstances, Bishop's "intellectual capacity" is one of the "objective facts" from which inferences as to his sincerity or insincerity can be fairly drawn. *See* Witmer v. United States, *supra* at 381–382, 75 S.Ct. 392. Moreover, when the Department's reference to Bishop's "intellectual capacity" is examined in the complete context of the Department's recommendation, it is clear that this was the limited manner in which it was considered.

There is another significant distinction between the Justice Department's recommendation here and those analyzed by the *Sicurella* and *Shepherd* courts. In each of the latter cases, the Department's report specifically announced that *regardless* the registrants' sincerity, their belief in self defense and theocratic warfare negated their claims for conscientious objector exemptions. *See* Sicurella v. United States, *supra* at 392, 75 S.Ct. 403; Shepherd v. United States, *supra* at 944. Here, the Justice Department made no such explicit finding with respect to any lack of intellectual capability on Bishop's part, but, as already em-phasized, merely reported this capability as one of the factors weighed in the evaluation of Bishop's sincerity. Hence, Bishop's reliance upon *Sicurella* and *Shepherd* is misplaced. *See generally* Bradley v. United States, 218 F.2d 657, 663 (9th Cir. 1954).[1]

Bishop's second contention is that there is no "basis in fact" supporting the denial of his claimed conscientious objector exemption. The rejection of such claims have been frequently reviewed by our court; however, the experience of dealing with this recurrent problem makes the inquiry no less difficult, since, as the Supreme Court has remarked, the subjective state of a registrant's mind is simply not amenable to unerring objective determination. Hence, lest our own subjective appraisal be permitted to supplant that of the agency in whom Congress has placed the unenviable task, we are warned not to attempt to sit as super draft boards and that the scope of our review is "the narrowest known to the law." Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957). Long ago, our court explained:

"[W]hen a reviewing court is considering whether a board's denial of a conscientious objector claim in a given case had basis in fact, the board's action is entitled to the support of any inference of sham or insincerity on the part of the registrant which the board could have drawn validly and fairly from the record upon which it acted."

Bradley v. United States, *supra* at 661 (citation omitted).

1. It should be noted that both the *Sicurella* and *Shepherd* opinions emphasize the high probability that the appeal boards relied upon the erroneous legal conclusions expressed in the challenged recommendations of the Department of Justice and the fact that the records contained *nothing* to discount that probability. This is not the situation here. Bishop's appeal board referred Bishop's file to the Department of Justice *after* it had tentatively determined that his claim should be rejected. While there is little doubt that Bishop's appeal board considered the Department's recommendation, since the recommendation served simply to confirm the board's initial determination, it is unlikely that the board afforded it the significant weight which was presumed in *Sicurella* and *Shepherd*. Hence, as the situation here is unlike those in *Sicurella* and *Shepherd*, we think we should apply the usual presumption that the appeal board fully considered all the relevant information presented and properly classified Bishop according to the applicable statutes and regulations. *See* Oestereich v. Selective Service System Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring).

The record upon which Bishop's appeal board rejected his claim for exemption includes his Selective Service Classification Questionnaire (SSS Form No. 100), a Special Form for Conscientious Objector (SSS Form No. 150), a letter from the local presiding Minister of Jehovah's Witnesses, a memorandum transcript of the proceedings during Bishop's personal appearance, and the Department of Justice letter of recommendation. Under the limited scope of review permitted us, these documents provide solid support for affirmation of the board's determination. For purposes of this opinion it is only necessary that we point to some of the information which they contain.

In late 1963, when Bishop filed his initial Selective Service Questionnaire, he crossed out the portion pertaining to conscientious objection and reported that he was then engaged in agricultural work on his family's farm while attending high school. Based on this information, the local board determined that while Bishop did not qualify for an agricultural deferment, he should be exempted pending his completion of high school. After completing high school, Bishop received a Current Information Questionnaire (SSS Form No. 127). This advised him to report any changes since his initial questionnaire had been filed which might affect his classification. Bishop returned this form, informing the local board that he had completed high school and was continuing to work part-time on the family farm; however, he again failed to make any reference to possible conscientious objection. The local board, remaining unimpressed by his agricultural status, classified Bishop as available for military service.

Several months later, as the date of induction for those registrants in Bishop's age group approached, the local board mailed the appellant a second Current Information Questionnaire which was completed and returned the very next day. Bishop reported that he was no longer working the family farm, but he took this occasion to inform the board that as a result of bible studies with Jehovah's Witnesses he had become a conscientious objector. Thereafter, when Bishop completed the Special Form for Conscientious Objectors, he further explained that his beliefs were acquired from a study of the bible begun as early as 1959.

The record, therefore, discloses that Bishop's beliefs, whatever their substance, solidified sometime after his graduation from high school, sometime after exemption for his argicultural status had been implicitly denied, sometime after he completed his first Current Information Questionnaire, and, most significantly, sometime after he was classified I-A, available for military service. We do not suggest, of course, that sudden "Road-to-Damascus" conversion is impossible or even unusual; however, when such a claim is asserted the Selective Service authorities are authorized to treat its sincerity as so sufficiently suspect that the suddenness of the conversion may be considered as one of those "objective facts before the Appeal Board * * * [which] cast doubt on the sincerity of his claim." Witmer v. United States, *supra* 348 U.S. at 382, 75 S.Ct. at 396. *See also* United States v. Corliss, 280 F.2d 808, 812 (2d Cir.), *cert. denied,* 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960).

Furthermore, several residents of the small community where Bishop lived, worked, and attended school cast doubt on the sincerity of his religious beliefs. An official of Bishop's school, who claimed to know the registrant well, expressed his opinion that Bishop was attempting to use Jehovah's Witnesses as a "front" to avoid military service, explaining that he was more a "party boy" than a religious person. This impression was also held by a school teacher who had known Bishop for six or seven years. The teacher told FBI investigators who conducted an investigation for the Justice Department that he had never, during their association, heard Bishop speak of religion or take a stand ordinarily expected of a Jehovah's Witness and that he believed Bishop was simply trying to

dodge the draft because he had "just seen him run around and drinking too much." Finally, a neighbor of Bishop confirmed the fact that young Bishop had at times been excessive in his use of alcohol.

To be sure, as the appellant suggests, there was evidence contradictory of the opinions expressing doubt as to Bishop's sincerity. Moreover, we agree that one need not be a "saint" in order to qualify as a conscientious objector. However, we are not authorized to evaluate the record beyond satisfying ourselves that facts existed from which an inference of insincerity could be fairly drawn. We are convinced that under the appropriate standard of review, the opinions expressed by associates of Bishop, although in part contradicted, provided the board with sufficient "basis in fact" to support its determination.

Finally, as the Justice Department noted, Bishop presented only the vaguest description of the nature and origin of his religious attitude. Indeed, when pressed for an explanation of the nature of his bible studies and why his beliefs had changed, Bishop offered little more information than that he had been studying with Jehovah's Witnesses. It does appear that the teaching which he had received was casual and intermittent and had been given him by a cousin. One seeking exemption from military service bears the burden of establishing his entitlement to a particular exemption; hence, we have repeatedly emphasized that a registrant does not sufficiently establish a valid claim for conscientious objector exemption by merely proving his membership in a particular religious sect. *See, e.g.,* Bradley v. United States, *supra* at 661 and cases cited therein. Bishop was not, and had never been, a member of Jehovah's Witnesses, and the showing which he made in support of his conscientious objector claim was, as we see it, essentially weak. While his appeal board was empowered to decide that he had successfully carried his burden, it made its decision to the contrary.

The record, parts of which we have emphasized, fully reveals the adequate "basis in fact" for that decision.

Affirmed.