**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas Stewart ATHERTON, Defendant-Appellant.**

**No. 23406.**

United States Court of Appeals,
Ninth Circuit.

Sept. 10, 1970.

J. B. Tietz (argued), Los Angeles, Cal., for defendant-appellant.

T. E. Orliss (argued), Ronald S. Morrow, Asst. U. S. Attys., Wm. Matthew Byrne, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HAMLEY, BROWNING and ELY, Circuit Judges.

BROWNING, Circuit Judge.

Defendant appeals from his conviction for refusing induction into the armed forces. 50 U.S.C. App. § 462. He contends that his conscientious objector claim was rejected because of a misinterpretation of 50 U.S.C. App. § 456 (j), and that his I–A classification is without basis in fact.

The minutes of the local board suggest three possible bases for the rejection of defendant's conscientious objector claim.

First, the local board may have relied upon 32 C.F.R. § 1625.2, which prohibits the reopening of a registrant's classification after the mailing of an order to

report for induction unless the board first specifically finds that there was a change in the registrant's status after the order to report was mailed.[1]

Here, however, the local board issued two orders to defendant to report for induction. The first was cancelled by the board when defendant filed his Special Form for Conscientious Objectors (SSS Form No. 150). The second order, upon which this prosecution rests, postdated the filing of defendant's Form 150; and therefore the local board could not properly have applied 32 C.F.R. § 1625.2 to defendant's claim.

The second and third bases for the rejection of defendant's claim by the local board are related, and are suggested by the board's statements that "Mr. Atherton is not a member of any particular religious sect," and that "He bases his claim on his own personal beliefs."

▮ Exemption under section 456(j) of the statute is not predicated upon membership in a religious sect and adherence to its tenets. As the Supreme Court pointed out in United States v. Seeger, 380 U.S. 163, 172, 85 S.Ct. 850, 857, 13 L.Ed.2d 733 (1965), "Congress recognized that one might be religious without belonging to an organized church * * *", and intended section 456(j) to focus upon "individual belief —rather than membership in a church or sect * * *."

Defendant expressly claimed that his objections to war in any form were based upon religious faith. "In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight." United States v. Seeger, *supra,* 380 U.S. at 184, 85 S.Ct. at 863. There is nothing in the record to contradict defendant's claim.

▮ The local board's statement that defendant "bases his claim on his own personal beliefs" might be read as a reference to the statutory provision excluding claims based upon a "merely personal moral code." But this exception applies only if the registrant's claim rests upon "a moral code which is not only personal but which is the *sole* basis for the registrant's belief and is in no way related to a Supreme Being." United States v. Seeger, *supra,* 380 U.S. at 186, 85 S.Ct. at 864 (emphasis added); *see also* Fleming v. United States, 344 F.2d 912, 915–916 (10th Cir. 1965). As we have said, this is not true of defendant's claim.

The government contends that the board classified defendant I–A on the independently sufficient ground that his avowed beliefs were not sincerely held—pointing to an entry in the board's minutes stating that when defendant asked why his claim had been rejected, "The Board told him that they decide whether they feel he is a genuine conscientious objector, and that they base their decision on the information he gives them."

Deciding whether a registrant is "a genuine conscientious objector," however, is not the equivalent of deciding whether his claim is made in good faith; and the balance of the minute entry indicates that the board was referring to whether defendant's claim fell within the statutory definition of a conscientious objector and not to the sincerity of his claim.

▮ Finally, the government urges that in any event the basis for the local board's classification is irrelevant because defendant's I–A classification was reviewed and continued by the state appeal board.

---

1. The board pointed out that defendant had filed his conscientious objector claim after being ordered to report for induction, that he had not claimed to be a conscientious objector in his original classification questionnaire, and that he had admitted that his beliefs matured between that time and the time he received his induction notice. The board told defendant that he should have filed his SSS Form No. 150 before he received his induction notice.

32 C.F.R. § 1626.26 requires state appeal boards to classify appealing registrants anew; and it has been held that since official agencies are presumed to operate in a lawful manner, deficiencies in a local board classification may be rendered harmless by reclassification by the state appeal board. *E. g.*, Storey v. United States, 370 F.2d 255, 258–259, (9th Cir. 1966); Cramer v. France, 148 F.2d 801, 804–805 (9th Cir. 1945); *see also* Bowles v. United States, 319 U.S. 33, 35, 36, 63 S.Ct. 912, 87 L.Ed. 1194 (1943).

This doctrine does not save the present prosecution, however, for in the light of the record and the rationale underlying the cure doctrine, it cannot be assumed that the appeal board applied proper classification standards in this case.

■ Despite occasional sweeping statements that appeal board reclassification renders prior local board proceedings irrelevant, the rule that appellate reclassification cures local board errors "is not inflexible." United States v. Stepler, 258 F.2d 310, 316 (3 Cir. 1956). A survey of the cases indicates that the rule is applied only where it appears from the nature of the deficiency or from other circumstances in the record that it is reasonable to assume that the defect in local board proceedings was in fact cured by appellate reclassification. Thus, ordinarily a registrant's claim of local board bias is cured by reclassification by an appeal board;[2] but not where the record suggests that the local board may have influenced the state board's action.[3] Likewise, local board errors relating to the presentation of a registrant's case are corrected by appellate reclassification where any significant deficiency in the record resulting from the errors was corrected before the appeal board acted;[4] but not where the record fails to exclude the possibility that the local board's unlawful action may have resulted in an

2. Falbo v. United States, 320 U.S. 549, 555, 64 S.Ct. 346, 88 L.Ed. 1089 (1944) (concurring opinion of Justice Rutledge); Clay v. United States, 397 F.2d 901, 912–913 (5th Cir. 1968); Reed v. United States, 205 F.2d 216, 218 (9th Cir. 1953); Cramer v. France, 148 F.2d 801, 805 (9th Cir. 1945). *But see* Niznik v. United States, 173 F.2d 328, 336 (6th Cir. 1949).

3. United States v. Peebles, 220 F.2d 114, 119–20 (7th Cir. 1955).

4. Storey v. United States, 370 F.2d 255, 258–259 (9th Cir. 1966); United States v. Moore, 217 F.2d 428, 431–432 (7th Cir. 1954); Tyrrell v. United States, 200 F.2d 8, 11 (9th Cir. 1952); Niznik v. United States, 173 F.2d 328, 334–335 (6th Cir. 1949).

A number of courts have held that local board failure to afford a registrant a full and fair hearing invalidates a registrant's classification even though the registrant has been reclassified by an appeal board on a full record of what transpired below. Franks v. United States, 216 F.2d 266, 270 (9th Cir. 1954); United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3d Cir. 1953); Mintz v. Howlett, 207 F.2d 758, 762 (2d Cir. 1953); Knox v. United States, 200 F.2d

398, 401–402 (9th Cir. 1952). *See also* Niznik v. United States, 173 F.2d 328, 336 (6th Cir. 1949).

The rationale of these decisions—that a registrant is entitled to a full and fair consideration of his claim at every level of the Selective Service process—might well extend to cases like the present in which the local board's consideration of the merits of the registrant's conscientious objector claim was marred by that board's misconstruction of the statute.

The Military Selective Service Act of 1967 eliminated the Justice Department investigation and hearing in conscientious objector cases, and thus left the local board as the only agency in the Selective Service System which has an opportunity to observe the registrant's demeanor. Since "the attitude and demeanor of the person in question is likely to give the best clue as to the degree of [his] conscientiousness and sincerity, and * * * the extent and quality of his beliefs," White v. United States, 215 F.2d 782, 785 (9th Cir. 1954), it is especially important that local boards consider conscientious objection claims unaffected by legal misconceptions.

inadequate presentation of the registrant's claim before the appeal board.[5]

Cases dealing with local board utilization of an illegal standard in classifying a registrant draw a similar distinction—holding that appellate reclassification renders the local board error harmless where the record supports the conclusion that the appeal board did not apply the same standard as the local board,[6] but reaching the opposite result where, as in this case, the record is silent regarding the standard applied by the appeal board and there is nothing to support an inference that it differed from that applied by the local board.[7]

5. United States v. Fry, 203 F.2d 638, 640 (2d Cir. 1953); United States v. Stiles, 169 F.2d 455 (3d Cir. 1948); United States v. Zeiber, 161 F.2d 90 (3d Cir. 1947).

6. Bowles v. United States, 319 U.S. 33, 63 S.Ct. 912, 87 L.Ed. 1194 (1943); United States v. Morico, 415 F.2d 138 (2d Cir. 1969); De Remer v. United States, 340 F.2d 712 (8th Cir. 1965); United States v. Van Hook, 284 F.2d 489 (7th Cir. 1960), rev'd on other grounds 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961); United States v. Chodorski, 240 F.2d 590 (7th Cir. 1956); Tomlinson v. United States, 216 F.2d 12, 16 (9th Cir. 1954).

In *Bowles* the ground upon which the registrant's appeal to the President was decided was expressly stated. 319 U.S. at 35, 63 S.Ct. 912. In *Morico* the local and state board chairmen testified to the standards which had been applied. 415 F.2d at 143–144. In *Van Hook* the appeal board stated that it was "entirely ignoring all of the local board's conclusions * * *." 284 F.2d at 491.

In *Tomlinson* the registrant filed a statement calling the local board's erroneous legal standard to the appeal board's attention, and stating and documenting the proper legal standard by reference to official materials. 216 F.2d at 12. This was also true in *Chodorski*, 240 F.2d at 593. Moreover, in *Chodorski* and *De Remer*, the appeal board set aside the local board's I–A classification and placed the registrant in Class I–A–O.

7. United States v. Stepler, 258 F.2d 310 (3d Cir. 1958); Mintz v. Howlett, 207 F.2d 758 (2d Cir. 1953); Niznik v. United States, 184 F.2d 972 (6th Cir. 1950); United States v. Balogh, 157 F.2d 939 (2d Cir. 1946); United States ex rel. Levy v. Cain, 149 F.2d 338 (2d Cir. 1945); United States v. Corliss, 280 F.2d 808, 816–817 (2d Cir. 1960) (dictum). *See also* United States v. Seeger, 380 U.S. 163, 167–168, 187, 85 S.Ct. ·850, 13 L.Ed.2d 733 (1965); Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403, 99 L.Ed. 436 (1955); Shepherd v. United States, 217 F.2d 942, 945–946 (9th Cir. 1954).

This is the implicit holding of *Balogh* and *Cain*, as the Supreme Court recognized in *Sicurella, supra,* 348 U.S. at 392, 75 S.Ct. 403; and is also the implicit ruling in *Niznik*.

In *Stepler* the local board stated its reasons for denying the registrant a ministerial exemption and one of these reflected a misconstruction of the statute. The appeal board continued the registrant's classification without comment. The court pointed out that the local board statement reflecting the erroneous standard was before the appeal board, and there was nothing to indicate that the appeal board regarded the statement as incorrect. The court concluded: "From this record we cannot tell whether the appeal board accepted the [unlawful] reasons given by the local board. Since the record is so unclear, we cannot say that the error of the local board was cured on appeal." 258 F.2d at 317.

In *Mintz* the court held that continuation of a registrant's classification by the National Appeal Board had not cured a defect arising from the local and state boards' misconstruction of the statute, remarking that the National Board had "stated no reasons" for its action.

In *Corliss* Judge Friendly recognized and applied the doctrine that local board prejudice will not upset an appeal board's reclassification, but noted, "Cases where the Local Board had applied an erroneous test and it is impossible to tell whether the Appeal Board relied upon this are distinguishable [citing *Stepler, Niznik, Mintz* and the discussion in *Chodorski*]." 280 F.2d at 816–817.

In *Seeger, Sicurella,* and *Shepherd,* the Department of Justice applied an illegal standard in determining the classification it would recommend to the appeal board, and the appeal board placed the registrant in the recommended classification without indicating the basis for its decision. It was held that the appeal board's classification decision was vitiated because it could not be determined whether the appeal board had relied on the improper ground in classify-

As Judge Moore recently suggested in United States v. Morico, 415 F.2d 138, 143 (2d Cir. 1969), this result may be mandated by the Constitution:

> "Because the draft system directly affects personal liberty, the appellant must have a right to have his classification judicially reviewed at some point. * * * While the right to have a court review the action of the board is * * * restricted, review must be meaningful * * * in the sense that it must encompass a record from which a court can determine whether there was a basis in fact for decision, what that basis was *and whether the board applied the correct legal standard.*" (Citations omitted; emphasis added.)[8]

In any event, the general presumption that appeal boards act lawfully does not alone suffice to cure a local board's use of an illegal classification standard.[9] And since there is nothing in the present record which would lend direct or inferential support to a conclusion that the appeal board's classification was not based upon the illegal standards applied by the local board, defendant's classification cannot stand.

The judgment will issue forthwith, and no petition for rehearing or suggestion for in banc rehearing will be entertained. Rule 2, Fed.R.App.P.[10]

Reversed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. This appeal has had a long and troubled history, and I now file the sixth opinion to be issued in the case. Indeed, the vacillation of the majority in striving to enunciate a palatable rationale for its result reinforces my conviction that the judgment should be affirmed.

The majority filed its first opinion on October 9, 1969, reversing Atherton's conviction because the appeal board failed specifically to recite a finding that Atherton's belated protestations of conscientious objector beliefs were insincere. I dissented from that opinion also. Thereafter the Government, "with the approval of the Solicitor General of the United States," filed a Petition for Rehearing *En Banc*, vigorously urging that the majority's original opinion conflicted with numerous precedents, including prior opinions of our own court. The majority then withdrew its original opinion and issued, on April 1, 1970, a substitute that I found equally unacceptable. That second opinion, as I saw it, substituted the majority's judgment for that of the Selective Service authorities on

---

ing the registrant. Although distinguishable, the cases are persuasive. Appeal boards are no more bound by Department of Justice recommendations than they are by local board classifications, and they are just as prone to rely upon a local board decision as they are to rely upon the Department's judgment. See note 9.

Our decision in Bishop v. United States, 412 F.2d 1064 (9th Cir. 1969), is not contrary to the rule stated in the text. *Bishop* did no more than reject defendant's contention "that were we to decide that incorrect standards were applied by [defendant's] local board, reversal is *required.*" *Id.* at 1065 (emphasis added).

8. *See also* Ypparila v. United States, 219 F.2d 465, 469 (10th Cir. 1954).

9. A recent study suggests that the assumption that appeal boards reclassify without reference to the local board's prior action "ignores the actual approach that appeal boards take to their reviewing function." "Appeal board chairmen interviewed admitted their panels gave consideration and credence to classifications made by local boards, particularly in close cases." Comment, The Selective Service System: An Administrative Obstacle Course, 54 Calif.L.Rev. 2123, 2159 (1966).

10. The majority and dissenting opinions were submitted to the active judges of the court and a vote taken on the question of in banc consideration. A majority of the court voted against such consideration. Judges Chambers, Barnes, Ely, Carter, Kilkenny, and Trask would have heard the case in banc.

the question of the sincerity of Atherton in the profession of his alleged conscientious objector beliefs. I dissented from the second opinion, setting out, in fine detail, the "objective facts before the Appeal Board * * * [which] cast doubt on the sincerity of [Atherton's] claim." Witmer v. United States, 348 U.S. 375, 382, 75 S.Ct. 392, 396, 99 L. Ed. 428 (1955).

The Government then filed a second Petition for Rehearing *En Banc,* attempting to demonstrate that the majority's second disposition was also wrong and that there was indeed a "basis in fact" for the challenged classification. Apparently, the majority now agrees with the Government's and my position in that respect also, for it now withdraws its second opinion and substitutes its third. If I interpret this third opinion correctly, the majority has now, in essence, reverted to that position which was so vigorously assailed by the Government in its first Petition for Rehearing.

The issue on which my Brothers and I part company is whether, despite the presence of a "basis in fact," this record presents sufficient facts to overcome the presumption that Atherton's appeal board considered the relevant information in his Selective Service file and based its classification upon those facts which cast doubt on his sincerity. *See generally* Oestereich v. Selective Service Board, 393 U.S. 233, 239, 89 S.Ct. 414, 21 L.Ed.2d 402 (1969) (Harlan, J., concurring); Storey v. United States, 370 F.2d 255 (9th Cir. 1966); DeRemer v. United States, 340 F.2d 712 (8th Cir. 1965); Tomlinson v. United States, 216 F.2d 12 (9th Cir. 1954), cert. denied, 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755 (1955). *See also* Keene v. United States, 266 F.2d 378 (10th Cir. 1959); Koch v. United States, 150 F.2d 762 (4th Cir.

1945); United States v. Richmond, 274 F.Supp. 43 (C.D.Cal.1967); *cf.* Shepherd v. United States, 217 F.2d 942 (9th Cir. 1954); Wells v. United States, 158 F.2d 932 (5th Cir. 1946), cert. denied, 330 U.S. 827, 67 S.Ct. 867, 91 L.Ed. 1276 (1947); United States v. Fratick, 140 F.2d 5 (7th Cir. 1944).

In reversing the conviction, the majority holds, in effect, that because the registrant's local board applied erroneous standards and his appeal board expressed no reasons for its decision, we must presume that the later classification was invalidly made. Since, indubitably, there was "basis in fact" for the challenged classification, I must assume that the majority would uphold the District Court had the appeal board simply noted, "The facts before us cast doubt upon the registrant's sincerity, and his claim to exemption is therefore denied." I cannot adopt this technicality.[1] Our limited scope of review is "the narrowest known to the law." Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957), and the majority injects a new requirement of mere formalism into the processing of Selective Service registrants which the presumption of validity seeks to avoid. The presumption of the validity of that processing which we are obliged to apply was designed, it seems to me, to avoid just that kind of formalism.

Furthermore, I simply cannot reconcile the majority's reasoning with Bishop v. United States, 412 F.2d 1064 (9th Cir. 1969), and the wealth of precedent on which that decision was based. The majority cites *Bishop* in its present opinion but buries the citation in its footnote 7 and does not undertake to explain its conclusion that *Bishop* is distinguishable. Since I was the author of our court's opinion in *Bishop,* I am confident that I have a fair understanding of its thrust.[2]

---

1. Surely, we should not expect that all those who serve as lay members of Selective Service bodies are equipped to prepare findings with the technical perfection and specificity required of judges in nonjury judicial proceedings.

2. Since my Brother Hamley joined in the issuance of our opinion in *Bishop,* I attribute his and my present disagreement to imprecision in my *Bishop* writing. *But see* United States v. Leavy, 422 F.2d 1155 (9th Cir. 1970).

In *Bishop,* the appellant argued at length that his local board applied erroneous standards when it denied his conscientious objector claim. Indeed, there was evidence that Bishop's local board acted upon an improper basis; nevertheless, we declared:

"Initially, we must reject Bishop's assumption that were we to decide that incorrect standards were applied by his local board, reversal is required. That question was settled in Tomlinson v. United States, 216 F.2d 12 (9th Cir. 1954), *cert. denied,* 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755 (1955), wherein we explained that it is the very purpose of the appeal board to correct any local board errors by making its separate investigation of the registrant's file and an independent classification decision. Accordingly, we limit our scrutiny to the standards applied by Bishop's appeal board."

*Id.* at 1066 (citations omitted). There, as in the instant case, Bishop's appeal board expressed no reasons for rejecting his appeal; · nevertheless, applying the usual presumption of validity, we affirmed when our review of the registrant's file revealed a "basis in fact" for the denial of his claim. This approach has long been followed by courts when reviewing Selective Service classifications in cases wherein the registrants' local boards assertedly applied erroneous standards. *See, e. g.,* Storey v. United States, *supra;* DeRemer v. United States, *supra;* United States v. Chodorski, 240 F.2d 590 (7th Cir. 1956); Reed v. United States, 205 F.2d 216 (9th Cir. 1953); Davis v. United States, 203 F.2d 853 (9th Cir.), cert. denied, 345 U.S. 996, 73 S.Ct. 1138, 97 L.Ed. 1403 (1953); Tyrrell v. United States, 200 F.2d 8 (9th Cir. 1952); Cramer v. France, 148 F.2d 801 (9th Cir. 1945). Hence, it is very clear, at least to me, that, heretofore, the fact that improper standards were applied by a local board is not of itself sufficient to overcome the presumption that the appeal board acted correctly.

Nor am I persuaded that the cases collected in footnote 7 of the majority's new opinion can be read as direct authority for its present holding. In United States v. Stepler, 258 F.2d 310 (3rd Cir. 1958), the registrant had been denied a ministerial exemption by his local board. The State Director reviewed the file and requested the local board to reopen and consider anew the registrant's claim. The board refused to do so, thus violating the requirement of section 1625.3(a) of the Selective Service Regulations. The court held that the failure to reopen constituted a denial of due process and that silent appeal board action could not cure a fundamental procedural error that denied the registrant a fair hearing. Similarly, in Niznik v. United States, 184 F.2d 972 (6th Cir. 1950), the evidence before the trial court revealed that the members of the local board had strong prejudices against Jehovah's Witnesses. Again, since the registrant had been denied a fair hearing by the discriminatory practices of the local board, the appeal board could not be presumed to have had before it sufficient information upon which to base a valid independent determination. Moreover, it does not appear that the question of the presumption of appeal board regularity was raised either there or in Niznik's previous appeal from a former conviction for the same offense. Niznik v. United States, 173 F.2d 328 (6th Cir. 1949).

Likewise, Mintz v. Howlett, 207 F.2d 758 (2d Cir. 1953), raises the same point. There, the court decided that the registrant had been entitled to a personal appearance and a hearing on a critical issue of fact. Since he never had an opportunity to present his arguments, it was held that the appeal board could not have had before it a record on which it could have made a valid classification. Furthermore, as the majority forthrightly recognizes, the question of presumptive regularity was not raised in United States v. Balogh, 157 F.2d 939 (2d Cir. 1946), or in United States ex rel. Levy v. Cain, 149 F.2d 338 (2d Cir. 1945). The majority cites United States v. Corliss, 280 F.2d 808 (2d Cir. 1960). It

notes that its quotation from that case is dictum, but I think we should not overlook the sentence in *Corliss* which immediately precedes the majority's quotation:

> "It is settled that where there is no evidence that the Appeal Board has been misled, unfair conduct by members of the Local Board will not upset a classification."

*Id.* at 816 (citing several Courts of Appeal decisions). As I have pointed out, the cases relied upon by the *Corliss* court in support of its dictum cannot be read so broadly.

I cannot interpret the Supreme Court's holdings in *Siourella, Ypparila,* and *Seeger* as inconsistent with the proposition that mere application of erroneous standards by the local board is not sufficient to overcome the presumption of regularity on the part of the appeal board. First, in *Sicurella,* the petitioner, a member of Jehovah's Witnesses, had been denied classification as a conscientious objector when the Department of Justice, although admitting the sincerity of the petitioner's beliefs, categorically stated that his claim should be denied because of his willingness to engage in "theocratic wars." The Supreme Court reversed because of the strong probability that an appeal board, comprised of non-lawyers, would be greatly influenced by an interpretation of existing law which was supplied to it by the Department of Justice and which specifically directed that the registrant's sincerity be disregarded. Similarly, the executive policy toward conscientious objectors' admitting willingness to fight "theocratic wars" was the deciding factor in *Ypparila.* There, the question was whether the National Selective Service Appeal Board applied erroneous standards when it took the highly unusual course of overturning a partial exemption which the registrant's appeal board had granted and imposing its own I-A classification. Owing to the likelihood that this extraordinary action was prompted by application of the erroneous policy then followed by the Government, the court invalidated the appellant's conviction. And in *Seeger,* another Supreme Court case mentioned by the majority, the petitioner's conviction was overturned after the Supreme Court had assured itself that the registrant's classification was not based upon the consideration of sincerity —the appropriate standard—but upon an erroneous interpretation of the law.

In conclusion, then, I simply cannot agree that when a local board applies incorrect standards and the appeal board states no reasons to support its subsequent denial that, ipso facto, the presumption of validity is erased, especially where, as here, we are now apparently in agreement that the record reveals a "basis in fact" for the appeal board's denial of the claimed exemption.[3]

I would affirm.[4]

---

3. I note United States v. Haughton, 413 F.2d 736 (9th Cir. 1969), which the majority does not cite. To the extent to which the opinion in that case might be read to conflict with the *Bishop* rationale, I think it, too, represents an undesirable departure from salutary principles which have long guided the courts in their review of Selective Service classifications.

4. I do not protest the decision that the Government shall not be permitted to attack the majority's latest opinion by a petition for rehearing. Our court should now make its final disposition of this particular controversy. There remains, however, the unanswered question of the extent, if any, of the retroactive application of the majority's opinion; hence, I expect that we shall soon be required generally to review the problem again.